UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| In re: | **Case No.: 15-31954-rld7** |
|---|---|
| Brandon Michael Stalwick, dba Pacific Crest Contractors and | |
| Colleen Michelle Stalwick, aka Colleen M. Gleeson, aka Michelle Colleen Stalwick, fka Colleen Michelle Gleeson, | DECLARATION OF TRACEY BARON IN RESPONSE TO UNITUS COMMUNITY CREDIT UNION'S OBJECTION TO NOTICE OF INTENT TO SELL PROPERTY AT PRIVATE SALE |
| Debtors. | |

THE UNDERSIGNED, Tracey Baron, declares under penalty of perjury that the following statements are made based on personal knowledge and belief and are true and correct.

1.     My name is Tracey Baron, and I am the manager of Turning Leaf Homes, LLC ("TLH"). This is a family business that my wife and I run. We have no employees and I do most if not all of the work myself.

2.     What TLH has been doing for the past years is to acquire the imperfect interest from the bankruptcy trustees in this District of homes that have been vacant for some extended period of time, up to three or four years without any sign of attention by anyone, including the lender or loan servicer. These homes more often than not, because of vacancy, have fallen into disrepair and in some cases, vagrancy and criminal activities.

Page 1 – DECLARATION OF TURNING LEAF HOMES, LLC

3.     After major cleaning and repairing of the property, I would rent it out to people who are in the process of regaining their financial footings after the recession and who cannot rent from others because of their damaged credit. My tenants are conscientious and responsible because they have just gotten over their own financial hardship and are motivated to rebuild their life. I rent below market in order to keep the property occupied and tended to.

4.     My costs to maintain these properties are much higher than the initial acquisition. I pay not only for the cleaning and repair, but also for upkeeps and insurance. Often I have to pay a large bill of past due homeowner/condo association fees as well as keeping up with other regular and special assessments. It is common that I would be responsible for tens of thousands in code violations due to the neglect of the previous owner and the lenders/loan servicer.

5.     During the tenancy, I use my best efforts to determine the underlying liens and encumbrances in order to pay them off. Because my investment is substantial, I am determined to complete my interest as the owner of the property and not to simply rent it out for an indefinite amount of time.

6.     I have been involved in litigation by necessity and not by choice because the loan servicers and lawyers deliberately omit me from notice of the auction sale or the judicial foreclosure lawsuit. Litigation is necessary because the loan servicers and their lawyer s will not provide me with the information necessary to pay off the lien since I am not on the mortgage loan. Without an attorney, I simply cannot get any cooperation from the loan servicer or their lawyer.

7.     After adding up the costs of acquisition, repairs, insurance, assessments, code violations and legal fees, one can see that I have invested a lot into the property and therefore I

Page 2 – DECLARATION OF TURNING LEAF HOMES, LLC

sincerely want to pay off the mortgage lien in order to perfect my ownership interest in the property.

8.      The proposed purchase from the bankruptcy trustee is of record, and cannot go through unless authorized by the Court. I have made similar purchases from different trustees and these purchases have all been authorized by the Court. Yet, for some unknown reasons, Ms. Jennifer Aspaas has been determined to malign my name and my family business by repeatedly referring to what we are doing as "a *scheme* to delay and hinder foreclosure." I am not certain who I am supposedly scheming with but Ms. Aspaas has made this accusation consistently without providing the Court with any evidence to back it up.

9.      I simply would like to engage in a transaction that makes business sense, for me, and for the bankruptcy estate.

DATED this 18th day of August, 2015.

_____
TRACEY BARON

Page 3 – DECLARATION OF TURNING LEAF HOMES, LLC

# EXHIBIT A
# TRANSCRIPT OF HEARING
# IN RE RONDA JEAN WHITE

9/22/2014
01:30 PM  ■ 11-34804 tmb 7

**MONDAY**
Ronda Jean White

Judge Trish M Brown

**Notice of Intent to Sell Property at Private Sale and Compensate Real Estate Broker (If Any) Filed By Trustee Peter C McKittrick (McKittrick, Peter) (106)**

Ronda Jean White - db          ANN K CHAPMAN
Peter C McKittrick - tr         ✓Chris Coyle

Evidentiary Hearing:    Yes: ☐   No: ☑        No Appaas

Sound business judgment of the trustee
Allow the sale

Order to be prepared by:   ☐ clerk's office   ☐ chambers   ☑ Mr McKittrick

DOCKET ENTRY:

Run Date: 9/22/2014

# EXHIBIT B

# OBJECTION AND ATTACHMENT
# SUBMITTED BY J. ASPAAS

# IN RE CARLTON

1

2   **RCO LEGAL, P.S.**                                    Honorable Judge Randall L. Dunn
    13555 SE 36th St., Ste. 300                                                    Chapter 7
3   Bellevue, WA 98006
    Phone: 425.458.2121
4   Fax: 425.458.2131
    www.rcolegal.com

5                       UNITED STATES BANKRUPTCY COURT
                                 DISTRICT OF OREGON
6

7   In re:

8   Robert Lynn Clayton and                        Case No. 14-33124-rld7
    Debra Sue Johnson-Clayton,
9                                                   WELLS FARGO BANK, N.A.'S
                                                    MEMORANDUM IN SUPPORT OF
10                                                  OBJECTION TO TRUSTEE'S NOTICE OF
                                         Debtors.   INTENT TO SELL
11

12                          I.      INTRODUCTION

13          COMES NOW Wells Fargo Bank, N.A and submits this Memorandum in support of its

14  objection to the Trustee's Notice of Intent to Sell the property located 640 E. Main St., Carlton,

15  OR 97111 (hereinafter "Property").

16                          II.     STATEMENT OF FACTS

17          On or about November 14, 2006, Debra S. Johnson-Clayton and Robert Lynn Clayton

18  executed and delivered a note in favor of SCME Mortgage Bankers, Inc. in the original principal

19  amount of $408,750.00.  This Note was secured by a Deed of Trust ('Deed') encumbering real

20  property commonly described as 640 East Main Street, Carlton, OR 97111 ('Property').  Creditor

21  is the holder of the note or services the note for the holder.  The outstanding balance due on the

22  Note as of filing was approximately $479,076.00.  As of the same date the loan was contractually

23  due for the July 2011 payment.

24

25          On July 23, 2014, the trustee filed a Notice of Intent to Sell Property to Turning Leaf

26  Homes, LLC ("Turning Leaf") for $7,500.00 and "subject to all liens and encumbrances thereon".

WELLS FARGO BANK, N.A.'S MEMORANDUM . . .
PAGE 1 OF 3                                    RCO           13555 SE 36th St., Ste. 300
                                                            Bellevue, WA 98006
                                          LEGAL, P.S.       Phone: 425.458.2121
                                                            Fax:   425.458.2131

*See*, Dkt. 12.  The value of the Property is listed as $755,675.00 in Schedule A of Debtor's Petition. Dkt. 1.

## II.    AUTHORITY AND ARGUMENT

A. <u>The sale to Turning Leaf is part of a scheme to hinder and delay.</u>

Wells Fargo objects to the trustee's sale of the property to Turning Leaf because it is part of a scheme to hinder and delay foreclosure.  Turning Leaf's intention with the purchase of the Property is to tie up the Property in litigation and rent it for as long as possible, and try to extract additional settlement money from Wells Fargo.[1]  Turning Leaf is believed to be affiliated with Big Blue Capital Partners, LLC[2], which has filed lawsuits after purchasing distressed properties. *See Big Blue Capital Partners, LLC v. ReconTrust Co. ("Big Blue I")*, 2012 WL 1605784 (D.Or. May 4, 2012)(courtesy copy attached), *Big Blue Capital Partners, LLC v. ReconTrust Co. ("Big Blue II ")*, 2012 WL 1870752 (D.Or. May 21, 2012)(courtesy copy attached), *Big Blue Capital v. ReconTrust Co. ("Big Blue III ")*, 2012 WL 2049455 (D. Or. June 4, 2012)(courtesy copy attached).  The Court's opinion in *Big Blue I* described the purchasers as follows:

> Further, the record makes clear that [Big Blue's] sole purpose in initiating this suit was to frustrate and delay non-judicial foreclosures under the OTDA in order to exact a settlement from the lender; plaintiff capitalizes on this ruse by purchasing properties, at a fraction of their value, from borrowers who have already materially defaulted on their loan obligations.

*Big Blue Capital Partners, LLC v. ReconTrust Co. ("Big Blue I"), 2012 WL 1605784 (D.Or. May 4, 2012).*  By intervening in the foreclosure action, Turning Leaf Homes, LLC is able to delay the foreclosure by a minimum of 4-6 months.

---

[1] See as Exhibit A a true and correct copy of Purchaser's marketing materials obtained from the website www.livinglies.wordpress.com specifically at http://livinglies.wordpress.com/2011/11/19/new-solution-is-the-homeowner-protected/
[2] Big Blue and Turning Leaf have common ownership.  *See* Exhibit A, paragraph 3, line 2.

WELLS FARGO BANK, N.A.'S MEMORANDUM . . .
PAGE 2 OF 3

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:   425.458.2131

B. <u>Turning Leaf should not be allowed to purchase the property because it frustrates the purpose of the Bankruptcy Code</u>

First, by purchasing the property from the bankruptcy estate or debtor after filing bankruptcy, Turning Leaf Homes, LLC and the debtors are able to avoid the possible ramification of 11 U.S.C. §362(d)(4) which provides that relief from stay will be granted In Rem if the property was transferred as part of a scheme to delay, hinder or defraud Creditor by transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval.

Second, the transfer of the Property to Turning Leaf would further frustrate the purposes of the Bankruptcy Code because the transfer would both compromise the security interest held by Creditor, and would also result in a distribution to the general unsecured creditor, through the payment of funds to the estate, who would be paid from funds derived from the secured property before the secured Creditor was paid in full. Use of the bankruptcy Court and bankruptcy process should not be allowed for that purpose. The proposed sale and should not be allowed or approved by the Court.

III.     CONCLUSION

Based on the foregoing and the evidence presented to the Court, Wells Fargo respectfully requests the Court to deny approval of the sale which is the subject of the trustee's Notice of Intent to Sell Property.

Dated this 21st day of November 2014.

/s/ Jennifer L. Aspaas
Jennifer L. Aspaas, OSB#032357
Attorney for Creditor, Wells Fargo Bank, N.A.

WELLS FARGO BANK, N.A.'S MEMORANDUM . . .
PAGE 3 OF 3

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:   425.458.2131

We have a new solution for helping people in difficult situations like yours. In order to help you with your situation you must have recently been discharged from a Chapter 7 bankruptcy and have a loan that is owned in a privately securitized bond trust. Don't worry if you do not know this answer, we will help you figure this part out. It is important to remember that if your loan is owned by Fannie Mae, Freddie Mac, FHA or VA, we unfortunately cannot help you at this time.

We are only focusing on Chapter 7 homeowners at this time, as it alleviates for the most part the deficiencies, etc. and they are typically facing losing the home back to the bank very shortly. These homeowners are typically more educated with the process since they have addressed loan mods and short sales throughout the time in foreclosure and we can focus on business of acquiring, litigating and property managing homes. It's a much simpler process with post 7 people. We will consider Chapter 13 people but for now Marc wants to stay focused on the 7's as there are so many of them out there.

The Company was started by former Ohio Attorney General Marc Dann, who is a leading foreclosure defense litigator; Tracey Baron, founder of Turning Leaf Advisors, successful loss Mitigation Company and Robert Mittleman, Director of Education, Laurus Title Group.

Marc Dann and the Big Blue Legal Team will oversee the efforts to review all of the Chapter 7 Discharged properties to hone in on properties with first mortgage liens that can be challenged through litigation. Lawyers will evaluate the likelihood of success in litigating a lien strip or purchase of the first mortgage note by identifying properties where the mortgages are securitized and the security interest of the bond trust has not been perfected, where there are issues related to the fraudulent assignment of mortgages or failure to indorse promissory notes within in the timelines established by the pooling and servicing agreements that govern the bond trusts comprised of securitized mortgages.

Big Blue's legal operation will then oversee and pay for aggressive foreclosure defense or pro-active quiet title actions to challenge the standing of the alleged mortgage and note holders to foreclose on the acquired property. The Big Blue legal team will create brief and discovery banks and standards and intensively monitor lawyers hired to litigate cases.

What our company and partner Law Firms does is purchase your home subject to the existing mortgages and aggressively fight the lenders who are likely to foreclose on your home shortly. The purpose of this is to settle the outstanding liens using litigation.

We identify and acquire carefully pre-selected parcels of residential real estate owned by individuals who have been discharged from Chapter 7 Bankruptcy in situations where the Bankruptcy Trustee has abandoned any claim to the property.

Big Blue Capital Partners will acquire the interest subject to the mortgage after discharge, but before the mortgage holder seeks to foreclose and aggressively litigate the validity of the mortgage lien. Through this process, we will attempt to purchase the security interests in the properties at a substantial discount.



Exhibit A

We are only focusing on Chapter 7 homeowners at this time, as it alleviates for the most part the deficiencies, etc. and they are typically facing losing the home back to the bank very shortly. These homeowners are typically more educated with the process since they have addressed loan mods and short sales throughout the time in foreclosure and we can focus on business of acquiring, litigating and property managing homes. It's a much simpler process with post 7 people. We will consider Chapter 13 people but for now Marc wants to stay focused on the 7's as there are so many of them out there.

Our team, led by experienced Lawyers, Mortgage experts, Title experts and Real Estate professionals, will take your place in the foreclosure process and if your property qualifies, and is accepted by us, we will aggressively litigate the imminent foreclosure process by the bank or lender, and take over the property entirely.

Should you be accepted into either of our programs all of the responsibilities related to the ownership of your home will shift to Big Blue Capital Partners, LLC and it's Law Firm. Should you decide to stay in your property, you will become a tenant with a genuine opportunity to regain ownership of your home if we are successful in our efforts by receiving an option to purchase the property back at some time in the future.

BIG BLUE LITIGATION TEAM:

BOWLES FERNANDEZ LAW LLC
Lake Oswego, OR

DANN, DOBERDRUK & WELLEN
Cleveland, OH

THE LARSEN LAW FIRM, LLC
Chicago, IL

MARK ZANIDES LAW OFFICES- a Former US Asst. Attorney General in the Bay Area.
Santa Ana, CA

LUSK, DRASITES, TOLISANO & SMITH
Cape Coral, Florida

PADDY DEIGHAN, Esq. PhD
Haddonfield, NJ

PROSPER LAW CORPORATION
Los Angeles, CA
Las Vegas, NV.

We are currently only working in these state right now in Oregon Massachusetts, Florida, Illinois, New York and California, where our counsel is Mark Zanides, a former US Asst.

Attorney General in the Bay area. We are being as conservative as we can in this area to make sure that we have all of our ducks in a row. We don't take on a property until we analyze the Pooling and Servicing Agreement and have a good handle as to the underlying issues with the mortgage.

We cannot help everybody, we do not work with GSE loans as they do not have the same improprieties as the privately secured bond trusts and they do not have the same type of guarantees that come along with government loans.

Listen Ladies and Gentleman, this is a true way to fight these lenders, our team is experienced and we want to help.

We will not be successful 100% of the time, however if we are careful with analyzing the characteristics of the underlying loan, we should be able to increase the likelihood of potential success, based on the current case law in each respective state, which is changing every day. The homeowner will have the option of staying in the home at a below fair market value rent during the litigation process. Our law firm & partners will only litigate through our program, To be considered into our program email me at: bmw@bigbluellc.com leave your contact info so we may send you the program packet.

B. Michael White
Big Blue LLC
Partner
925-478-1949
bmw@bigbluellc.com

Case 14-33124-rld7    Doc 45    Filed 11/21/14

2012 WL 1605784
Only the Westlaw citation is currently available.
United States District Court,
D. Oregon.

BIG BLUE CAPITAL PARTNERS, LLC, Plaintiff,
v.

RECONTRUST COMPANY, N.A.; The Bank of
New York Mellon fka the Bank of New York, as
trustee for the benefit of Cwalt, Inc., alternative
loan trust 2007–19 mortgage pass through
certificates, series 2007–19; and Mortgage
Electronic Registration Systems, Inc., Defendants.

No. 6:11–CV–06368–AA.    |    May 4, 2012.

**Attorneys and Law Firms**

John P. Bowles, Jeffrey A. Myers, Bowles Fernandez Law
LLC, Lake Oswego, Oregon, for plaintiff.

Pilar C. French, Kristen L. Tranetzki, Lane Powell PC,
Portland, Oregon, for defendants.

## OPINION AND ORDER

AIKEN, Chief J.

*1 Defendants ReconTrust Company, N.A. ("ReconTrust"),
the Bank of New York Mellon fka the Bank of New York
("BNYM"), and Mortgage Electronic Registration Systems,
Inc. ("MERS") move to dismiss plaintiff Big Blue Capital
Partners, LLC's claims pursuant to Fed.R.Civ.P. 12(b)(1)
and Fed.R.Civ.P. 12(b)(6). In addition, defendants filed two
motions for judicial notice. For the reasons set forth below,
defendants' motions [1] are granted and this case is dismissed.

## BACKGROUND

On April 2, 2007, Thomas and Trina Reid[2] took out a loan
from Plaza Home Mortgage, Inc. ("Plaza"), in the amount of
$455,000, to purchase a residential property (the "Property").
Pursuant to this transaction, the Reids executed a promissory
note (the "Note") in favor of Plaza. The Note was secured by
a trust deed (the "Deed of Trust"), which lists Plaza as the
lender, MERS as the beneficiary, and Ticor Title Company as

the trustee. The Deed of Trust was filed in Douglas County,
Oregon on April 6, 2007.

Pursuant to the Deed of Trust, the Reids agreed to make
monthly mortgage payments as required under the Note; the
Reids also agreed that they would be in default, and subject to
foreclosure, if they failed to make such payments. In addition,
the Deed of Trust required the Reids to obtain approval, in
writing, before selling or transferring their interest in the
Property.

In 2009, the Reids stopped making the requisite loan
repayments, thereby materially defaulting. On February 4,
2010, MERS assigned the Deed of Trust to BNYM, as trustee
for certificate holder CWALT, Inc. Also on February 4, 2010,
MERS appointed ReconTrust to serve as successor trustee
for the Deed of Trust. That same day, ReconTrust executed
a Notice of Default and Election to Sell the Property. On
February 8, 2010, the Assignment of the Deed of Trust,
Appointment of Successor Trustee, and Notice of Default
and Election to Sell were recorded in the official records of
Douglas County.

On December 1, 2010, ReconTrust issued a Rescission of the
Notice of Default, which was duly recorded in the official
records of Douglas County on December 6, 2010.

On December 9, 2010, the Reids filed a petition for relief
under Chapter 7 of the Bankruptcy Code. The petition
identified the value of their interest in the Property as
$450,000, subject to several secured claims, including one by
"Bank of America Home Loans" in the amount of $450,000.
The Reids, however, did not list any purported claims against
defendants as assets. On March 10, 2011, the bankruptcy
court granted the petition, thereby discharging the Reids'
debts.

On May 26, 2011, ReconTrust executed a second Notice
of Default and Election to Sell the Property. On May 31,
2011, the second Notice of Default and Election to Sell
was recorded in the official records of Douglas County.
The Notice stated that the foreclosure sale was scheduled
for October 6, 2011 at the Douglas County Courthouse. A
foreclosure sale has not yet occurred.

*2 On October 11, 2011, the Reids executed a quitclaim
deed, conveying their interest in the Property to plaintiff, a
limited liability company created under the laws of Ohio.[3]
Pursuant to that contract, plaintiff agreed to pay the Reids

Case 15-31954-rld7    Doc 32    Filed 08/18/15

$10,000 for the Property: $1000 immediately and $9000 "upon complete satisfaction of [plaintiff] in the negotiation and settlement of [the] underlying lien holder's interest."

On October 12, 2011, plaintiff filed a complaint in Douglas County Circuit Court; plaintiff asserts eight claims against defendants, all arising out of defendants' alleged failure to comply with the non-judicial foreclosure procedures outlined in the Oregon Trust Deed Act ("OTDA"). On November 18, 2011, defendants removed plaintiff's claims, on the basis of diversity jurisdiction, to this Court. Subsequently, defendants moved to dismiss plaintiff's complaint.

## STANDARDS

Where the court lacks subject-matter jurisdiction, the action must be dismissed. Fed.R.Civ.P. 12(b)(1). A challenge to standing is appropriately raised pursuant to Fed.R.Civ.P. 12(b) (1). *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir.2010). The party who seeks to invoke the subject-matter jurisdiction of the court has the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). In such instances, the court may hear evidence regarding subject-matter jurisdiction and resolve factual disputes where necessary; however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the [court] from evaluating for itself the merits of jurisdictional claims." *Kingman Reef Atoll Invs., LLC v. United States,* 541 F.3d 1189, 1195 (9th Cir.2008).

Similarly, where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walters,* 719 F.2d 1422, 1424 (9th Cir.1983). However, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Tgbal,* 556 U.S. 662, 681 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Bacca,* 652 F.3d 1202, 1216, *reh'g en banc denied,* 659 F.3d 850 (9th Cir.2011).

## DISCUSSION

Defendants assert that plaintiff's complaint must be dismissed because this Court lacks subject-matter jurisdiction. In addition, defendants contend that plaintiff fails to state plausible claims for relief.

### I. *Motions for Judicial Notice*

**\*3** To support their motion to dismiss, defendants request that this Court take judicial notice of: plaintiff's Certificate and Articles of Incorporation, filed on October 13, 2011; the Deed of Trust; the Notices of Default and Elections to Sell; the Assignment of the Deed of Trust; the Appointment of Successor Trustee; the Rescission of the Notice of Default; the Reids' petition for relief under Chapter 7 of the Bankruptcy Code; the bankruptcy court docket for the Reids' case; a printout of an online advertisement for plaintiff, describing its business strategy; *Niday v. GMAC Mortg.,* Case No. CV 10–02–0001, Transcript of Proceedings (Clackamas Cnty. Cir. Crt. Oct. 28, 2010); *Buckland v. Aurora Loan Servs.,* Case No. 10–CV–1023, Judgment (Josephine Cnty. Cir. Crt. March 18, 2011); *Spencer v. Guaranty Bank,* Case No. 10CV0515ST, Memo. Op. (Deschutes Cnty. Cir. Crt. May 5, 2011); *Nigro v. Northwest Tr. Servs., Inc.,* Case No. 11–CV–0135, Letter Op. (Josephine Cnty. Cir. Crt. May 11, 2011); *U.S. Bank v. Flynn,* Case No. 11–8011, Letter Op. (Columbia Cnty. Cir. Crt. June 23, 2011); *Somers v. Deutsche Bank Nat'l Trust Co.,* Case Nos. CV 11–02–0133 and FE 110027, Letter Op. (Clackamas Cnty. Cir. Crt. July 6, 2011); *Yovko v. Northwest Tr. Servs., Inc.,* Case No. C11–0703CV, Order (Washington Cnty. Cir. Crt. Aug. 3, 2011); *Yovko v. Northwest Tr. Servs., Inc.,* Case No. C11–0703CV, Order (Washington Cnty. Cir. Crt. Nov. 22, 2011); *Fed. Nat'l Mortg. Assoc. v. Goodrich,* Case No. 11001639E, Judgment (Jackson Cnty. Cir. Crt. Dec. 7, 2011); *Melli v. ReconTrust Co.,* Case No. C12–0112CV, Order (Washington Cnty. Cir. Crt. Jan. 11, 2012); *Lind v. Fidelity Nat'l Title Ins. Co.,* Case No. C116471CV, Order (Washington Cnty. Cir. Crt. Jan. 23, 2012); and *Mashia v. Northwest Tr. Servs., Inc.,* Case No. 1008–12752, Op. and Order (Multnomah Cnty. Cir. Crt. Jan. 23, 2012). Plaintiff does not oppose defendants' motions.

Review of a 12(b)(6) motion is generally limited to the complaint. *United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir.2003). However, a "court may take judicial notice of 'matters of public record.' " *Lee v. City of Los Angeles,* 250

F.3d 668, 689 (9th Cir.2001) (quoting *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986)). Further, a court may take judicial notice of extrinsic documents if they are integral to the plaintiff's claims and their authenticity is undisputed. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 n. 4 (9th Cir.1998).

Under the Federal Rules of Evidence, a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201; *see also Ritchie,* 342 F.3d at 909. Facts subject to judicial notice may be considered on a motion to dismiss. *Mullis v. U.S. Bankruptcy Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987).

**\*4** The relevant facts in this case are largely undisputed. Further, most of the documents that defendants seek judicial notice of are recorded in the official records of Douglas County or case law, which are already part of the public record and are therefore capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

With the exception of plaintiff's online advertisement, I find that the additional documents introduced by defendants are also not subject to reasonable dispute. Plaintiff's online advertisement, however, is not part of the public record and, additionally, does not meet the requirements of Fed.R.Evid. 201. Moreover, plaintiff did not incorporate this document by reference, as plaintiff does not make any mention of its business practices in the complaint, other than to describe the process by which it purchased the Reids' Property. *See* Compl. ¶¶ 19–22. Therefore, except in regard to plaintiff's online advertisement, defendants' requests for judicial notice are granted.

## II. Motion to Dismiss

The issue at this stage in the proceedings is whether plaintiff has Article III and prudential standing; or, alternatively, whether plaintiff can allege any plausible claims for relief relating to defendants' attempted foreclosure of the Property.

### A. Article III Standing

The standing jurisprudence of federal courts "contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, [and] prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified School Dist. v. Newdow,* 542 U.S. 1, 11 (2004) (citations and internal quotations omitted).

The "irreducible constitutional minimum of standing" requires three elements: 1) plaintiff must have suffered an "injury in fact"; 2) the injury must be "fairly traceable to the challenged action of the defendant"; and 3) "it must be likely ... that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 560–61 (citations and internal quotations omitted).

Defendants contend that plaintiff lacks standing because its " 'injury' resulted from its *own decision* to purchase an encumbered property from a defaulting borrower." Defs.' Memo. in Supp. of Mot. Dism. 9 (emphasis in original). Defendants argue that a "self-inflicted injury like this" does not satisfy the traceability requirements of Article III. *Id.* at 10 (citing *Pennsylvania v. New Jersey,* 426 U.S. 660, 664 (1976)).

Conversely, plaintiff asserts that, "as the owner of the property, [it] will imminently suffer the loss of property for which it has paid consideration ... [t]he fact that [p]laintiff was aware of the imminent injury in no way prevents [p]laintiff from suffering it." Pl.'s Resp. to Mot. Dism. 12. Plaintiff then argues that defendants' reliance on *Pennsylvania v. New Jersey* is misplaced, "because the injury is not being inflicted upon [p]laintiff by [p]laintiff's actions, but by the wrongful foreclosure process initiated and maintained by [d]efendants." *Id* .

**\*5** Thus, it is undisputed that plaintiff knowingly purchased the Property after the Reids materially defaulted on the Note and defendants initiated non-judicial foreclosure proceedings. *Id.; see also* Compl. ¶¶ 19–22. It is also undisputed that plaintiff had no involvement whatsoever in the lending process and is not named in, or a party to, any of the loan or foreclosure documents. *See generally* Deed of Trust; Assignment of the Deed of Trust; Notices of Default and Elections to Sell; Rescission of the Notice of Default; Appointment of Successor Trustee; *see also* Compl. ¶ 5 (the Note "is solely between the [Reid[s] ... and Lender"). Moreover, the record reveals that the Reids took out the loan for the Property in their individual capacities and for their own residential use. Accordingly, the allegations in plaintiff's complaint all stem from defendants' response to the Reids' inability to make the requisite payments under the Note.

Therefore, plaintiff did not suffer an injury that is fairly traceable to the challenged actions of defendants. *See AOM Group, LLC v. Downey Sav. & Loan Ass'n, F.A.,* 2010 WL 3342024, *1 n. 1 (D.Ariz. Aug. 25, 2010) (company that purchased properties from borrowers in default in order to challenge the statutory non-judicial foreclosure proceedings lacked constitutional standing, citing *Fleck & Assocs., Inc. v. City of Phoenix,* 471 F.3d 1100, 1104 (9th Cir.2006)); *AOM Group LLC v. Provident Funding Assocs. LP,* 2010 WL 3342020, *1 (D.Ariz. Aug. 25, 2010) (same). Rather, defendants are correct that, to the extent that plaintiff suffered an injury, it was due to plaintiff's own actions in purchasing the Property after non-judicial foreclosure proceedings had been commenced.

Further, the record makes clear that plaintiff's sole purpose in initiating this suit was to frustrate and delay non-judicial foreclosures under the OTDA in order to exact a settlement from the lender; plaintiff capitalizes on this ruse by purchasing properties, at a fraction of their value, from borrowers who have already materially defaulted on their loan obligations. *See* Compl. ¶¶ 19–22; *see also* Compl. Ex. 3 at pg. 1 (contract conveying the Property from the Reids to plaintiff makes payment of 90% of the purchase price contingent upon plaintiff's ability to satisfactorily settle its claims against defendants).

These are precisely the circumstances that Article III's standing requirements seek to prevent federal courts from presiding over. As such, because plaintiff lacks Constitutional standing, this Court does not have subject-matter jurisdiction. Therefore, defendants' motion to dismiss is granted.

**B. Prudential Standing**
Regardless, even if plaintiff was able to meet the "irreducible constitutional minimum of standing" mandated by Article III, this action would nonetheless be dismissed due to prudential considerations.

The "prudential component of standing precludes the exercise of [subject-matter jursidiction] even where the Constitution's 'irreducible minimum' requirements have been met." *Or. Advocacy Ctr. v. Mink,* 322 F.3d 1101, 1108 (9th Cir.2003); *see also Allen v. Wright,* 468 U.S. 737, 751 (1984) (the court lacks subject-matter jurisdiction, due to prudential limitations, where a plaintiff "rais[es] another person's legal rights" or where a "complaint [does not] fall within the zone of interests protected by the law invoked").

*6 Accordingly, defendants also assert that this action must be dismissed because plaintiff's claims are premised on the legal rights or interests of the Reids, a non-party to this suit. In addition, plaintiff contends that the OTDA was only intended to protect those who have a duty to repay the Note and, as such, plaintiff "does not come within the 'zone of interests' that the OTDA was enacted to protect." Defs.' Memo. in Supp. of Mot. Dism. 10.

Plaintiff does not respond to defendants' argument relating to the "zone of interests" protected by the OTDA, but does contend that this action is not barred by prudential considerations because "[p]laintiff is not seeking to exercise the rights of any third party, it is seeking to exercise its own right as the owner of the [P]roperty." Pl.'s Resp. to Mot. Dism. 13.

**i. Third–Party Standing**
"As a general rule, a third-party does not having standing to bring a claim asserting a violation of someone else's rights." *Martin v. Cal. Dep't of Veterans Affairs,* 560 F.3d 1042, 1050 (9th Cir.2009) (citing *Powers v. Ohio,* 499 U.S. 400, 410 (1991)). This rule exists to avoid "the adjudication of rights which those not before the [c]ourt may not wish to assert, and [to ensure] that the most effective advocate of the rights at issue is present to champion them." *Elk Grove,* 542 U.S. at 15 n. 7 (citations and internal quotations omitted).

Accordingly, the rule applies even when the very same allegedly illegal act that affects the litigant also affects a third-party. *See United States v. Pavner,* 447 U.S. 727, 731–732 (1980). While there are a number of exceptions to this general rule, plaintiff does not argue, and the Court does not find, that any of these exceptions apply.

Thus, the sole issue is whether plaintiff's claims are premised upon its own rights or those of a third-party. As discussed above, plaintiff was not the original borrower and had no involvement in the lending process. Although plaintiff purports to have acquired the Property, plaintiff does not allege that it is a party to the Note or Deed of Trust. Moreover, under the terms of the Deed of Trust, the Reids were required to have written permission from the lender, or its successors and assigns, in order to transfer or sell their interest in the Property, which plaintiff does not allege occurred in this case. *See* Deed of Trust at 10. Accordingly, the Reids, rather than plaintiff, remain the parties required to repay the Note.

As such, plaintiff's complaint asserts the rights of a third-party, as defendants' allegedly wrongful non-judicial foreclosure proceedings infringed only upon the Reids' interests.[4] *See HPG Corp. v. Aurora Loan Servs., LLC,* 436 B.R. 569, 580 (E.D.Cal.2010) (corporation did not have prudential standing, on behalf of homeowners in default on their loan obligations, to challenge the lender's alleged failure to follow statutory non-judicial foreclosure procedures). The fact that plaintiff interjected itself into defendants' non-judicial foreclosure, via a real estate purchase contract, in order to profit from the Reids' unfortunate circumstances cannot remedy this defect.

*7 Finally, plaintiff fails to demonstrate any hindrance the Reids' ability to protect their own interests. Rather, the influx of cases arising out of non-judicial foreclosures around the country demonstrate that homeowners are capable of asserting their own rights. *See Bertrand v. Suntrust Mortg., Inc.,* 2011 WL 1113421, *1 (D.Or. March 23, 2011) (noting the "veritable tsunami of investigation into and litigation over mortgage foreclosure practices"). The fact that individuals in foreclosure proceedings may be unable to hire legal counsel is not "the type of hindrance necessary to allow another to assert the indigent [party's] rights." *Kowalski v. Tesmer,* 543 U.S. 125, 132 (2004). Accordingly, plaintiff does not have prudential standing to bring the claims asserted in the complaint. Therefore, plaintiff's claims must be dismissed for this additional reason.

**ii. *"Zone of Interests" Protected by the OTDA***
In assessing the "zone of interests" protected by a statute, a court need not "inquire whether there has been a congressional intent to benefit the would-be plaintiff," but instead must determine only whether the plaintiff's interests are among those "arguably ... to be protected" by the statutory provision. *Nat'l Credit Union v. First Nat'l Bank & Trust Co.,* 552 U.S. 478, 489 (1998). As such, the "zone of interests" test

"is not meant to be demanding." *Clarke v. Secs. Indus. Ass'n,* 479 U.S. 388, 399–400 (1987).

Despite this low threshold, plaintiff nevertheless does not fall within the "zone of interests" created by the OTDA. The OTDA was enacted "to protect [borrowers] from the unauthorized foreclosure and wrongful sale of property, while at the same time providing [lenders] with a quick and efficient remedy." *Staffordshire Inv., Inc. v. Cal–Western Reconveyance Corp.,* 209 Or.App. 528, 542, 149 P.3d 150 (2006). To accomplish this goal, the OTDA requires that the lender strictly comply with its provisions in order to effectuate non-judicial foreclosure. *Id.; James v. Recontrust Co.,* 2012 WL 653871, *5 (D.Or. Feb. 29, 2012); *see also* Or.Rev.Stat. §§ 86.705–86.795.

As such, there is nothing the in the OTDA that even arguably was intended to protect corporate entities, such as plaintiff, that purchase properties already in default and seek to profit by extracting a settlement from the lender. Therefore, this Court lacks subject-matter jurisdiction because plaintiff's interests do not fall within the purview of the OTDA.

### CONCLUSION

Defendants' Request for Judicial Notice (doc. 12) is GRANTED, except in regard to plaintiff's online advertisement, as to which the motion is DENIED. Defendants' Supplemental Motion for Request for Judicial Notice (doc. 16) is GRANTED. Further, defendants' Motion to Dismiss (doc. 10) is GRANTED. Accordingly, defendants' request for oral argument is DENIED as unnecessary. This case is DISMISSED and all pending motions are DENIED as moot.

*8 IT IS SO ORDERED.

Footnotes

1    Defendants' Supplemental Motion for Request for Judicial Notice is granted in its entirety; defendants' Request for Judicial Notice is also granted, except in regard to plaintiff's online advertisement, as to which the motion is denied.

2    The Reids are not a party to this litigation.

3    Plaintiff did not actually become a formal business entity until October 13, 2011, two days after it bought the Property from the Reids and one day after it filed the present action. In addition, plaintiff was not licensed to do business in Oregon until January 17, 2012. *See* Pl.'s Resp. to Mot. Dism. 13.

4    In many instances, plaintiff appears to allege that it was the original borrower. Compl. ¶¶ 68, 70, 78, 83. For example, the complaint asserts that "[p]laintiff was not in default on May 31, 2011," which was months before plaintiff even purchased the Property from

the Reids. *Id.* at ¶ 83. Thus, the pleadings themselves belie plaintiff's assertion that it's claims are not premised on the rights of a third-party.

---

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1870752
Only the Westlaw citation is currently available.
United States District Court,
D. Oregon.

BIG BLUE CAPITAL PARTNERS, LLC, Plaintiff,
v.
RECONTRUST COMPANY, N.A.; The Bank of
New York Mellon fka The Bank of New York, as
trustee for the benefit of Cwalt, Inc., alternative
loan trust 2006–45T1 mortgage pass through
certificates, series 2006–45T1; and Mortgage
Electronic Registration Systems, Inc.; Defendants.

No. 6:11–CV–1412–TC.    |    May 21, 2012.

**Attorneys and Law Firms**

Jeffrey A. Myers, John P. Bowles, Bowles Fernandez Law
LLC, Lake Oswego, OR, for Plaintiff.

Kristen L. Tranetzki, Pilar C. French, Lane Powell, PC,
Portland, OR, for Defendants.

**OPINION AND ORDER**

COFFIN, Magistrate J.

**\*1** Defendants ReconTrust Company, N.A. ("ReconTrust"),
the Bank of New York Mellon fka the Bank of New York
("BNYM"), and Mortgage Electronic Registration Systems,
Inc. ("MERS") move to dismiss plaintiff Big Blue Capital
Partners, LLC's complaint pursuant to Fed.R.Civ.P. 12(b)(1)
and Fed.R.Civ.P. 12(b)(6). The motion has been fully briefed
and this court heard oral argument on the matter. [1] As set forth
below, the motion to dismiss is allowed due to plaintiff's lack
of standing.

Judge Aiken recently dismissed a similar case for lack of
standing. *Big Blue Capital Partners, LLC v. ReconTrust
Company N.A .,* Case No. 6: 11–cv–6368AA. That case and
the present case essentially have the same parties, very similar
facts and the same attorneys. This court agrees with the
reasoning of Judge Aiken's opinion and, as discussed in more
detail below, it is appropriate to dismiss the present case for
a lack of standing.

**BACKGROUND**

In October, 2006, Daryl and Janet Richardson [2] took out a
loan from Countrywide Home Loans ("Countrywide") in the
amount of $1,500,000, to purchase property (the "Property").
Pursuant to this transaction, the Richardsons executed a
promissory note (the "Note") in favor of Countrywide. The
Note was secured by a trust deed (the "Deed of Trust"), which
lists Countrywide as the lender and MERS as the beneficiary.
The Deed of Trust was filed in Douglas County, Oregon.

Pursuant to the Deed of Trust, the Richardsons agreed to make
monthly mortgage payments as required under the Note; the
Richardsons also agreed that they would be in default, and
subject to foreclosure, if they failed to make such payments.
In addition, the Deed of Trust required the Richardsons to
obtain approval, in writing, before selling or transferring their
interest in the Property.

The Richardsons stopped making the required loan payments
two years ago and defaulted. MERS thereafter executed
and caused to be recorded an Assignment of Deed of
Trust to BNYM, in care of BAC Home Loan Servicing
LP, in the Douglass County Records Office. BNYM,
through BAC Home Loan Servcing LP, executed and
caused to be recorded an Appointment of Successor Trustee,
appointing ReconTrust, in the Douglass County Record's
Office. ReconTrust then commenced non-judicial foreclosure
proceedings by recording a Notice of Default and Election
to Sell on October 27, 2010, in the Douglass County
Records Office. ReconTrust cancelled and withdrew the
Notice of Default and Election to Sell on February 24,
2011. ReconTrust again commenced non-judicial foreclosure
proceedings, by recording a Notice of Default and Election
to Sell on June 10, 2011, in the Douglass County Record's
Office. This Notice of Default set the foreclosure sale for
October 17, 2011, but the sale has not yet occurred.

On October 17, 2011, the same day on which the Trustee's
Sale was to occur, the Richardsons executed a quitclaim deed
purporting to convey their interest in the Property to plaintiff.
Plaintiff is a limited liability company that was created under
the laws of Ohio. Although the Deed of Trust requires lender
approval for this sale, plaintiff does not allege that it or the
Richardsons sought or obtained such approval.

**\*2** On October 18, 2011—one day after acquiring the
property by quitclaim deed—plaintiff filed a complaint in

Douglas County Circuit Court. Plaintiff asserted several claims against defendants arising out of defendants' alleged failure to comply with the non-judicial foreclosure procedures outlined in the Oregon Trust Deed Act ("OTDA"). Defendants removed the action to this court on the basis of diversity jurisdiction.

## STANDARDS

Where the court lacks subject-matter jurisdiction, the action must be dismissed. Fed.R.Civ.P. 12(b)(1). A challenge to standing is appropriately raised pursuant to Fed.R.Civ.P. 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir.2010). The party who seeks to invoke the subject-matter jurisdiction of the court has the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In such instances, the court may hear evidence regarding subject-matter jurisdiction and resolve factual disputes where necessary; however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the [court] from evaluating for itself the merits of jurisdictional claims." *Kingman Reef Atoll Invs., LLC v. United States,* 541 F.3d 1189, 1195 (9th Cir.2008).

## DISCUSSION

Defendants assert that plaintiff's complaint must be dismissed for lack of subject-matter jurisdiction as plaintiff lacks both Article III standing and prudential standing.

The standing jurisprudence of federal courts "contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, [and] prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified School Dist. v. Newdow,* 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (citations and internal quotations omitted).

### A. *Article III Standing*

The "irreducible constitutional minimum of standing" requires three elements: 1) plaintiff must have suffered an "injury in fact"; 2) the injury must be "fairly traceable to the challenged action of the defendant"; and 3) "it must be likely ... that the injury will be redressed by a favorable

decision." *Lujan,* 504 U.S. at 560–61 (citations and internal quotations omitted).

Defendants contend that plaintiff lacks standing because its "injury" resulted from its *own decision* to purchase an encumbered property from a defaulting borrower. Defendants argue that this self-inflicted injury does not satisfy the traceability requirements of Article III. *Id.* at 10 (citing *Pennsylvania v. New Jersey,* 426 U.S. 660, 664, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976)).

Plaintiff asserts that as the owner of the property, it will imminently suffer the loss of property for which it has paid consideration and the fact that plaintiff was aware of the imminent injury in no way prevents plaintiff from suffering it. Plaintiff then argues that defendants' reliance on *Pennsylvania v. New Jersey* is misplaced because the injury is not being inflicted upon plaintiff by plaintiff's actions, but by the wrongful foreclosure process initiated and maintained by defendants.

**\*3** It is undisputed that plaintiff knowingly purchased the Property after the Richardsons defaulted on the Note and defendants initiated non-judicial foreclosure proceedings. It is also undisputed that plaintiff had no involvement whatsoever in the lending process and is not named in, or a party to, any of the loan or foreclosure documents. Moreover, the record reveals that the Richardsons took out the loan for the Property in their individual capacities and for their use.

As set forth above, the allegations in plaintiff's complaint all stem from defendants' response to the Richardsons inability to make the requisite payments under the Note. As such, plaintiff did not suffer an injury that is fairly traceable to the challenged actions of defendants. *See AOM Group, LLC v. Downey Sav. & Loan Ass'n, F.A.,* 2010 WL 3342024, *1 n. 1 (D.Ariz. Aug.25, 2010) (company that purchased properties from borrowers in default in order to challenge the statutory non-judicial foreclosure proceedings lacked constitutional standing, citing *Fleck & Assocs., Inc. v. City of Phoenix,* 471 F.3d 1100, 1104 (9th Cir.2006)); *AOM Group LLC v. Provident Funding Assocs. LP,* 2010 WL 3342020, *1 (D.Ariz. Aug.25, 2010) (same). To the extent that plaintiff suffered an injury, it was due to plaintiff's own actions in purchasing the Property after non-judicial foreclosure proceedings had been commenced.[3]

### B. *Prudential Standing*

Even if plaintiff was able to meet the "irreducible constitutional minimum of standing" mandated by Article III, dismissal of this action would be appropriate due to prudential considerations.

The "prudential component of standing precludes the exercise of [subject-matter jurisdiction] even where the Constitution's 'irreducible minimum' requirements have been met." *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1108 (9th Cir.2003); *see also Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (the court lacks subject-matter jurisdiction, due to prudential limitations, where a plaintiff "rais[es] another person's legal rights" or where a "complaint [does not] fall within the zone of interests protected by the law invoked").

Defendants assert that this action must be dismissed because plaintiff's claims are premised on the legal rights or interests of the Richardsons, a non-party to this suit. In addition, plaintiff contends that the OTDA was only intended to protect those who have a duty to repay the Note and, as such, plaintiff does not come within the "zone of interests" that the OTDA was enacted to protect.

Plaintiff does not respond to defendants' argument relating to the "zone of interests" protected by the OTDA, but does contend that this action is not barred by prudential considerations because plaintiff is not seeking to exercise the rights of any third party and is seeking to exercise its own right as the owner of the Property.

### i. *Third–Party Standing*
"As a general rule, a third-party does not having standing to bring a claim asserting a violation of someone else's rights." *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1050 (9th Cir.2009) (citing *Powers v. Ohio*, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)). This rule exists to avoid "the adjudication of rights which those not before the [c]ourt may not wish to assert, and [to ensure] that the most effective advocate of the rights at issue is present to champion them." *Elk Grove*, 542 U.S. at 15 n. 7 (citations and internal quotations omitted). The rule applies even when the very same allegedly illegal act that affects the litigant also affects a third party. *See United States v. Payner*, 447 U.S. 727, 731–732, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980). While there are a number of exceptions to this general rule, plaintiff does not argue, and this court does not find, that any of these exceptions are applicable here.

*4 Plaintiff's claims are not premised upon its own rights, but on the rights of a third-party. As discussed above, plaintiff was not the original borrower and had no involvement in the lending process. Although plaintiff purports to have acquired the Property, plaintiff does not allege that it is a party to the Note or Deed of Trust. Moreover, under the terms of the Deed of Trust, the Richardsons were required to have written permission from the lender, or its successors and assigns, in order to transfer or sell their interest in the Property, which plaintiff does not allege occurred in this case. Accordingly, the Richardsons, rather than plaintiff, remain the parties required to repay the Note. As such, defendants' allegedly wrongful non-judicial foreclosure proceedings infringed upon the Richardsons' rights. Plaintiff's complaint therefore asserts the rights of a third-party rather than its own. *See HPG Corp. v. Aurora Loan Servs., LLC*, 436 B.R. 569, 580 (E.D.Cal.2010) (corporation did not have prudential standing to pursue claims against the lender, on behalf of homeowners in default on their loan obligations, based upon lender's alleged failure to follow statutory procedures when conducting non-judicial foreclosures). The fact that plaintiff interjected itself into defendants' non-judicial foreclosure, via a real estate purchase contract, in order to profit from the Richarsdsons' unfortunate circumstances cannot remedy this defect.

Plaintiff has also failed to demonstrate any hindrance to the Richardsons' ability to protect their own interests. Rather, the influx of cases arising out of foreclosures around the country demonstrates that homeowners facing foreclosure are capable of asserting their own rights. *See Bertrand v. Suntrust Mortg., Inc.*, 2011 WL 1113421, *1 (D.Or. March 23, 2011) (noting the "veritable tsunami of investigation into and litigation over mortgage foreclosure practices"). The fact that individuals in foreclosure proceedings may be unable to hire counsel is not "the type of hindrance necessary to allow another to assert the indigent [party's] rights." *Kowalski v. Tesmer*, 543 U.S. 125, 132, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004).

### ii. *"Zone of Interests" Protected by the OTDA*
In assessing the "zone of interests" protected by a statute, a court need not "inquire whether there has been a congressional intent to benefit the would-be plaintiff," but instead must determine only whether the plaintiff's interests are among those "arguably ... to be protected" by the statutory provision. *Nat'l Credit Union v. First Nat'l Bank & Trust Co.*, 552 U.S. 478, 489 (1998). As such, the "zone of interests" test "is not meant to be demanding." *Clarke v. Secs. Indus.*

*Ass'n,* 479 U.S. 388, 399–400, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987).

Despite this low threshold, plaintiff does not fall within the "zone of interests" protected by the OTDA. The OTDA was enacted "to protect [borrowers] from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy." *Staffordshire Inv., Inc. v. Cal–Western Reconveyance Corp.,* 209 Or.App. 528, 542, 149 P.3d 150 (2006). To accomplish this goal, the OTDA requires that the creditor strictly comply with its provisions in order to effectuate non-judicial foreclosure. *Id.; James v. Recontrust Co.,* 2012 WL 653871, *5 (D.Or. Feb.29, 2012); *see also* Or.Rev.Stat. §§ 86.705–86.795.

**\*5** In short, there is nothing in the OTDA that even arguably was intended to protect corporate entities, such as plaintiff, that purchase properties already in default and seek to profit by extracting a settlement from the creditor. Therefore, this court lacks subject-matter jurisdiction because plaintiff's interests do not fall within the purview of the OTDA.

## CONCLUSION

The motion(# 25) to withdraw as counsel for plaintiff is allowed. Defendants' requests for judicial notice (# 13, # 18) are allowed. Defendants' Motion to Dismiss (# 11) is also allowed and this action is dismissed.

IT IS SO ORDERED.

## Footnotes

1   Defendants have also filed requests (# 13, # 18) for judicial notice which are not opposed and are allowed. A motion (# 25) to withdraw as counsel for plaintiff was recently filed and is allowed.
2   The Richardsons are not a party to this litigation.
3   Moreover, it appears that plaintiff's sole purpose in initiating this action was to frustrate and delay non-judicial foreclosures under the OTDA in order to exact a settlement from the lender; plaintiff capitalizes on this ruse by purchasing properties, at a fraction of their value, from borrowers who have already defaulted on their loan obligations.

2012 WL 2049455
Only the Westlaw citation is currently available.
United States District Court,
D. Oregon.

BIG BLUE CAPITAL a/b/n Big
Blue Capital Partners, Plaintiff,
v.
RECONTRUST COMPANY, N.A.; JPMorgan
Chase Bank, as trustee for GS Mortgage
Securities Corp GSR Mortgage Loan Trust
2004–7; and Bank America as successor by
merger to BAC Home Loan Servicing LP FKA
Countrywide Home Loan Servicing, Defendants.

No. 3:12–cv–00448–AA.    |    June 4, 2012.

**Attorneys and Law Firms**

Jeffrey A. Myers, John P. Bowles, Timothy J. Zimmerman, Bowles Fernandez Law, LLC, Lake Oswego, OR, for Plaintiff.

Kristen L. Tranetzki, Pilar C. French, Lane Powell, PC, Portland, OR, for Defendants.

### ORDER

AIKEN, Chief Judge:

*1 Defendants ReconTrust Company, N.A., JPMorgan Chase Bank, and Bank of America move to dismiss plaintiff Big Blue Capital Partners' claims pursuant to Fed.R.Civ.P. 12(b)(1) and Fed, R. Civ. P. 12(b)(6). For the reasons set forth below, defendants' motion is granted and this case is dismissed.

In April 2004, Michael and Raquel Rich[1] took out a loan from Countrywide Home Loans, Inc. ("Countrywide"), in the amount of $432,000, to purchase a residential property (the "Property"). Pursuant to this transaction, the Riches executed a promissory note (the "Note") in favor of Countrywide. The Note was secured by a trust deed (the "Deed of Trust"), which lists Countrywide as the lender, Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, and CTC Real Estate Services as the trustee. The Deed of Trust was duly recorded in Clackamas County, Oregon.

Pursuant to the Deed of Trust, the Riches agreed to make monthly mortgage payments as required under the Note; the Riches also agreed that they would be in default, and subject to foreclosure, if they failed to make such payments. In addition, the Deed of Trust required the Riches to obtain approval, in writing, before selling or transferring their interest in the Property.

In 2008, the Riches stopped making the requisite loan repayments, thereby materially defaulting. In March 2009, MERS appointed ReconTrust Company, N.A. ("ReconTrust") to serve as successor trustee for the Deed of Trust. Thereafter, ReconTrust executed a Notice of Default and Election to Sell the Property. The Appointment of Successor Trustee and Notice of Default and Election to Sell were documented in the official records of Clackamas County. In January 2010, ReconTrust formally rescinded the Notice of Default and Election to Sell.

In June 2010, MERS assigned the Deed of Trust to Deutsche Bank. Deutsche Bank again appointed ReconTrust to serve as successor trustee; ReconTrust then issued a second Notice of Default and Election to Sell the Property. The Assignment of the Deed of Trust, Appointment of Successor Trustee, and Notice of Default and Election to Sell were recorded in Clackamas County. In March 2011, ReconTrust formally rescinded the second Notice of Default and Election to Sell.

In April 2011, Deutsche Bank assigned the Deed of Trust to BAC Home Loan Servicing, LP and ReconTrust issued a third Notice of Default and Election to Sell the Property. These documents were duly recorded in the official records of Clackamas County.

In November 2011, the Riches filed a petition for relief under Chapter 13 of the Bankruptcy Code. The petition identified the value of their interest in the Property as $450,000, subject to two secured claims by "Bank of America."[2] The Riches, however, did not list any purported claims against defendants as assets.

In January 2012, the bankruptcy court confirmed the Riches' Chapter 13 plan and lifted the automatic stay, which precluded the pending non-judicial foreclosure of the Property. Accordingly, ReconTrust reinstituted foreclosure proceedings by issuing an Amended Notice of Sale. The Amended Notice scheduled the sale of the Property for March 15, 2012. A foreclosure sale has not yet occurred.

*2 On March 7, 2012, the Riches executed a bargain and sale deed, conveying their interest in the Property to plaintiff, a limited liability company created under the laws of Ohio. Pursuant to that contract, plaintiff agreed to pay the Riches $3,000 in exchange for the Property. Plaintiff, however, did not assume any obligation to repay the Note pursuant this transaction. Further, the Riches did not obtain written consent from their lender prior to transferring their interest in the Property, as required by the Deed of Trust.

On March 13, 2012, plaintiff filed a complaint in this Court; plaintiff asserts two claims against defendants, both arising out of defendants' alleged failure to comply with the non-judicial foreclosure procedures outlined in the Oregon Trust Deed Act ("OTDA"). Subsequently, defendants moved to dismiss this case, asserting, in part, that plaintiff does not have standing.

Where the court lacks subject-matter jurisdiction, the action must be dismissed. Fed.R.Civ.P. 12(b)(1). A challenge to standing is appropriately raised pursuant to Fed.R.Civ.P. 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir.2010). The party who seeks to invoke the subject-matter jurisdiction of the court has the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In such instances, the court may hear evidence regarding subject-matter jurisdiction and resolve factual disputes where necessary; however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the [court] from evaluating for itself the merits of jurisdictional claims." *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir.2008).

Plaintiff has filed a number of actions in this District that arise out of virtually identical facts and involve essentially the same parties and attorneys; in each instance, the case was dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because plaintiff did not have standing. *See Big Blue Capital Partners, LLC v. ReconTrust Co., N.A. ("Big Blue I")*, 2012 WL 1605784, *4–7 (D.Or. May 4, 2012); *Big Blue Capital Partners, LLC v. Recontrust Co., N.A. ("Big Blue II")*, 2012 WL 1870752, *2–5 (D.Or. May 21, 2012).[3]

Specifically, as this Court recently explained, plaintiff lacked standing under Article III of the Consitution because it "knowingly purchased the Property after the [borrower] materially defaulted on the Note and defendants initiated non-judicial foreclosure proceedings." *See Big Blue I*, 2012 WL 1605784 at *5. As such, plaintiff did not suffer an injury that was fairly traceable to defendants' challenged actions. *Id.*

Moreover, prudential standing was absent because plaintiff's claims were premised on a third-party's rights; namely, plaintiff's claims arose out of harm suffered by the non-party borrowers as a result of defendants' alleged failure to follow the non-judicial foreclosure procedures articulated in the OTDA. *Id.* at *7. Plaintiff also did not have prudential standing because the OTDA "was [not] intended to protect corporate entities [that] purchase properties already in default and seek to profit by extracting a settlement from the lender." *Id.* Therefore, for the reasons set forth in *Big Blue I* and *Big Blue II*, this Court lacks subject-matter jurisdiction.

## CONCLUSION

*3 Defendants' Motion to Dismiss (doc. 13) is GRANTED. The parties' requests for oral argument are DENIED as unnecessary. Finally, this case is DISMISSED and all pending motions are DENIED as moot.

IT IS SO ORDERED.

Footnotes

1    The Riches are not a party to this litigation.

2    In addition to their initial mortgage, the Riches executed a second lien against the Property in the amount of $82,278, which is not at issue in this case.

3    Plaintiff also has a case pending before Judge Mosman. *See Big Blue Capital Partners, LLC v. Recontrust Co., N.A.*, Case No. 3:12–cv–00292–MO.

**End of Document**                               © 2014 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

# ORDER APPROVING SALE BY JUDGE DUNN

# IN RE CARLTON

DISTRICT OF OREGON
**F I L E D**
December 02, 2014
Clerk, U.S. Bankruptcy Court

Below is an Order of the Court.

*Randall L. Dunn*
RANDALL L. DUNN
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Robert Lynn Clayton and Debra Sue Johnson-Clayton,<br><br>                Debtors. | Case No. 14-33124-rld7<br><br>**ORDER APPROVING SALE OF DEBTORS' INTEREST IN REAL PROPERTY SUBJECT TO LIENS AND ENCUMBRANCES** |

       This matter came before the Court on the Trustee's Notice of Intent ("Sale Request") to sell the Debtors' interest in the real property located at 640 E Main St. Carlton, OR. 97111 (the "Property"), subject to all liens and encumbrances thereon and subject further to the debtor's claim of a homestead exemption, together with any claims or defenses the Debtors may have regarding the extent and validity of the liens thereon, to Turning Leaf Homes, LLC, an Oregon limited liability company (Dkt. #12).  Wells Fargo Bank, N.A. ("Wells Fargo") objected to the Sale Request (Dkt. #16).

       The Court having held a hearing on Wells Fargo's objection to the Sale Request on November 25, 2014, and having considered the argument of counsel and the files and records herein, and being now fully advised of the premises, NOW, THEREFORE,

Page 1 -  **ORDER APPROVING SALE OF DEBTORS' INTEREST IN REAL PROPERTY SUBJECT TO LIENS AND ENCUMBRANCES**

982335.1

IT IS HEREBY ORDERED THAT:

The Trustee's sale of the Debtor's interest in the Property, subject to all liens and encumbrances thereon and subject further to the debtor's claim of a homestead exemption, together with any claims or defenses the debtor may have regarding the extent and validity of the liens thereon, to Turning Leaf Homes, LLC for $12,500.00 effective December 15, 2014, is approved. The Trustee is authorized and directed to execute such documents and instruments as are necessary to evidence the sale of such interest to Turning Leaf Homes, LLC.

###

The undersigned certifies compliance with LBR 9021-1(a)(2)(B) and that the circulation period prescribed by LBR 9021-1(a)(2)(B) has expired.

Presented by:

BALL JANIK LLP

By: /s/ David W. Criswell

David W. Criswell, OSB No. 925930
Attorneys for the Trustee

Parties to be Noticed by U.S. Mail:
American Honda Finance Corporation, National Bankruptcy Center, P.O. Box 168088, Irving, TX 75016-8088

Page 2 -  **ORDER APPROVING SALE OF DEBTORS' INTEREST IN REAL
PROPERTY SUBJECT TO LIENS AND ENCUMBRANCES**

982335.1

# EXHIBIT D

# OBJECTION AND ATTACHMENT
# SUBMITTED BY J. ASPAAS

# IN RE STALWICK

**RCO LEGAL, P.S.**
13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax: 425.458.2131
www.rcolegal.com

Honorable Judge Randall L. Dunn
Chapter 7

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF OREGON

In re:

Brandon Michael Stalwick, dba Pacific Crest
Contractors and
Colleen Michelle Stalwick, aka Colleen M
Gleeson, aka Michelle Colleen Stalwick, fka
colleen Michelle Gleeson

                                    Debtors.

Case No. 15-31954-rld7

UNITUS COMMUNITY CREDIT UNION'S
OBJECTION TO NOTICE OF INTENT TO
SELL PROPERTY AT PRIVATE SALE

COMES NOW Unitus Community Credit Union, ("Creditor"), and objects to the Trustee's Notice of Intent to Sell.

### I.  BACKGROUND

On or about January 12, 2013, Colleen Stalkwick executed and delivered a note in favor of Unitus Community Credit Union in the original principal amount of $197,400.00.  This Note was secured by a Deed of Trust ('Deed') encumbering real property commonly described as 15128 SE Belmore Street, Portland, OR 97236 ('Property').  Creditor is the holder of the note or services the note for the holder.

Creditor is the holder of the note or services the note for the holder.  The outstanding balance due on the Note as of filing was approximately $181,176.46.  As of the same date the loan was contractually due for the February 1, 2015 payment.

The Court granted relief from the automatic stay to Creditor on June 2, 2015.

Foreclosure is currently pending.  On July 16, 2015 Creditor recorded the Notice of Default in the Multnomah County Official Records under recording number 2015-088846.

UNITUS COMMUNITY CREDIT UNION'S
OBJECTION TO NOTICE OF . . . PAGE - 1

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Case 15-31954-rld7    Doc 27    Filed 08/10/15
Case 15-31954-rld7    Doc 32    Filed 08/18/15

## II.  AUTHORITY AND ARGUMENT

Creditor objects to the Trustee's Motion on the basis that the sale violates the terms of Creditor's security interest and the sale is part of a greater scheme to hinder and delay foreclosure.

### A.  Debt owed to Creditor must be paid in full upon sale of the Property:

Creditor objects to the Trustee's proposed sale of the Property on the basis that the sale will not generate sufficient funds to pay the debt owing to Creditor in full.  The Trustee proposes to sell the Property for $5,000.00 to Turning Leaf Homes, LLC.  The sale is for bare legal title to the property subject to all encumbrances.  The debt owed to Creditor will not be paid in full from the sale.  Pursuant to the terms of the Deed of Trust the debt owing to Creditor must be paid in full upon sale or transfer of the Property.  Specifically paragraph 18 of the Deed of Trust provides:

> "Transfer of the Property or a Beneficial Interest in Borrower.  If all or any part of the Property or interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument."

See as Exhibit A a true and correct copy of the recorded Deed of Trust.  Creditor does not consent to the sale or transfer of the Property without the debt being paid in full upon sale or transfer.  The sale should not be allowed without payment in full of the debt owed to Creditor.

### B.  Sale of Property is Part of Scheme to Hinder and Delay Foreclosure:

Creditor also objects to the sale of the Property to Turning Leaf Homes, LLC on the basis that the sale is part of scheme to hinder and delay foreclosure.  Turning Leaf's intention with the purchase of the Property is to tie up the Property in litigation and rent it for as long as possible, and try to extract additional settlement money from Wells Fargo.[1]  Turning Leaf is believed to be affiliated with Big Blue Capital Partners, LLC[2], which has filed lawsuits after purchasing distressed properties.  *See Big Blue*

---

[1] See as Exhibit B a true and correct copy of Purchaser's marketing materials obtained from the website www.livinglies.wordpress.com specifically at http://livinglies.wordpress.com/2011/11/19/new-solution-is-the-homeowner-protected/

[2] Big Blue and Turning Leaf have common ownership.  *See* Exhibit B, paragraph 3, line 2.

UNITUS COMMUNITY CREDIT UNION'S
OBJECTION TO NOTICE OF . . . PAGE - 2

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Case 15-31954-rld7   Doc 27   Filed 08/10/15
Case 15-31954-rld7   Doc 32   Filed 08/18/15

1  *Capital Partners, LLC v. ReconTrust Co. ("Big Blue I")*, 2012 WL 1605784 (D.Or. May 4,

2  2012)(courtesy copy attached), *Big Blue Capital Partners, LLC v. ReconTrust Co. ("Big Blue II ")*, 2012

3  WL 1870752 (D.Or. May 21, 2012)(courtesy copy attached), *Big Blue Capital v. ReconTrust Co. ("Big*

4  *Blue III ")*, 2012 WL 2049455 (D. Or. June 4, 2012)(courtesy copy attached).  The Court's opinion in

5  *Big Blue I* described the purchasers as follows:

6      Further, the record makes clear that [Big Blue's] sole purpose in initiating this suit was to
        frustrate and delay non-judicial foreclosures under the OTDA in order to exact a settlement from

7      the lender; plaintiff capitalizes on this ruse by purchasing properties, at a fraction of their value,
        from borrowers who have already materially defaulted on their loan obligations.

8

9  *Big Blue Capital Partners, LLC v. ReconTrust Co. ("Big Blue I"), 2012 WL 1605784 (D.Or. May 4, 2012).*

10 Turning Leaf Homes, LLC purchases homes from bankruptcy and then either intervenes in the judicial

11 foreclosure action raising frivolous claims regarding the securitization thereby prolonging the duration of

12 the foreclosure action or files frivolous law suits.     By intervening in the foreclosure action or

13 commencing an action against the Creditor and foreclosure trustee, Turning Leaf Homes, LLC is able to

14 delay the foreclosure by a minimum of 4-6 months.

15      **C.  Turning Leaf should not be allowed to purchase the property because it frustrates the
            purpose of the Bankruptcy Code**

16

17      The sale of the Property to Turning Leaf, LLC frustrates the purpose of the Bankruptcy Code and

18 should not be allowed.  By purchasing the property from the bankruptcy estate or debtor after filing

19 bankruptcy, Turning Leaf Homes, LLC and the debtors are able to avoid the possible ramification of 11

20 U.S.C. §362(d)(4) which provides that relief from stay will be granted In Rem if the property was

21 transferred as part of a scheme to delay, hinder or defraud Creditor by transfer of all or part ownership of,

22 or other interest in, such real property without the consent of the secured creditor or court approval.  The

23 transfer of the Property is part of a scheme to delay, hinder or defraud Creditor.  Use of the bankruptcy

24 Court and bankruptcy process should not be allowed for that purpose.  The proposed sale and should not be

25 allowed or approved by the Court.

26

UNITUS COMMUNITY CREDIT UNION'S
OBJECTION TO NOTICE OF . . . PAGE - 3

RCO
L E G A L, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:   425.458.2131

| | |
|---|---|
| 1 | Second, the transfer of the Property to Turning Leaf would further frustrate the purposes of the |
| 2 | Bankruptcy Code because the transfer would both compromise the security interest held by Creditor, and |
| 3 | would also result in a distribution to the general unsecured creditor, through the payment of funds to the |
| 4 | estate, who would be paid from funds derived from the secured property before the secured Creditor was |
| 5 | paid in full. Use of the bankruptcy Court and bankruptcy process should not be allowed for that purpose. |
| 6 | The proposed sale and should not be allowed or approved by the Court. |

### III. CONCLUSION

WHEREFORE, based on the foregoing, Creditor respectfully requests that the court deny the Trustee's request for approval of sale of the Property or in the alternative requests that an evidentiary hearing be scheduled on the matter.

DATED August 10, 2015.

**RCO LEGAL, P.S.**
ATTORNEYS AT LAW
Attorneys for Creditor


/s/ Jennifer L. Aspaas
By: Jennifer L. Aspaas, OSB #032357

UNITUS COMMUNITY CREDIT UNION'S
OBJECTION TO NOTICE OF . . . PAGE - 4

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Case 15-31954-rld7   Doc 27   Filed 08/10/15
Case 15-31954-rld7   Doc 32   Filed 08/18/15

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| | |
|---|---|
| In re: | Chapter 7 Bankruptcy |
| Brandon Michael Stalwick, dba Pacific Crest Contractors and Colleen Michelle Stalwick, aka Colleen M Gleeson, aka Michelle Colleen Stalwick, fka colleen Michelle Gleeson, | No.: 15-31954-rld7 |
| | CERTIFICATE OF MAILING |
| Debtors. | |

CERTIFICATE OF MAILING

I hereby certify under penalty of perjury under the laws of the State of Oregon that I mailed a true and correct copy of the Unitus Community Credit Union's Objection to Notice of Intent to Sell via postage pre-paid, regular first class mail or via Electronic Message through Electronic Case Filing on the 10th day of August, 2015, to the parties listed on the attached exhibit.

DATED this 10th day of August, 2015.


/s/ Tony Chhay
Assistant to Attorney

Certificate of Mailing
Page - 1

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Case 15-31954-rld7    Doc 27    Filed 08/10/15
Case 15-31954-rld7    Doc 32    Filed 08/18/15

1

2     Brandon Michael Stalwick
    11500 SE 119th Drive
3     Happy Valley, OR 97086

4
    Colleen Michelle Stalwick
5     11500 SE 119th Drive
    Happy Valley, OR 97086
6
    Adam M Weiner
7     8624 SE 13th Ave.
    Portland, WA 97202
8     adam@bankruptcylawportland.com

9
    Chapter 7 Trustee
10     Stephen P. Arnot
    P.O. Box 1963
11     Lake Oswego, OR 97035
    arnotlaw@sbcglobal.net
12
    JPMorgan Chase Bank, National Association
13     JAMES J NICITA
    920 SW 3rd Avenue, 1st Floor
14     Portland, OR 97204

15

16

17

18

19

20

21

22

23

24

25

26

Certificate of Mailing – Exhibit
Page - 2

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

Case 15-31954-rld7    Doc 27    Filed 08/10/15
Case 15-31954-rld7    Doc 32    Filed 08/18/15

We have a new solution for helping people in difficult situations like yours. In order to help you with your situation you must have recently been discharged from a Chapter 7 bankruptcy and have a loan that is owned in a privately securitized bond trust. Don't worry if you do not know this answer, we will help you figure this part out. It is important to remember that if your loan is owned by Fannie Mae, Freddie Mac, FHA or VA, we unfortunately cannot help you at this time.

We are only focusing on Chapter 7 homeowners at this time, as it alleviates for the most part the deficiencies, etc. and they are typically facing losing the home back to the bank very shortly. These homeowners are typically more educated with the process since they have addressed loan mods and short sales throughout the time in foreclosure and we can focus on business of acquiring, litigating and property managing homes. It's a much simpler process with post 7 people. We will consider Chapter 13 people but for now Marc wants to stay focused on the 7's as there are so many of them out there.

The Company was started by former Ohio Attorney General Marc Dann, who is a leading foreclosure defense litigator; Tracey Baron, founder of Turning Leaf Advisors, successful loss Mitigation Company and Robert Mittleman, Director of Education, Laurus Title Group.

Marc Dann and the Big Blue Legal Team will oversee the efforts to review all of the Chapter 7 Discharged properties to hone in on properties with first mortgage liens that can be challenged through litigation. Lawyers will evaluate the likelihood of success in litigating a lien strip or purchase of the first mortgage note by identifying properties where the mortgages are securitized and the security interest of the bond trust has not been perfected, where there are issues related to the fraudulent assignment of mortgages or failure to indorse promissory notes within in the timelines established by the pooling and servicing agreements that govern the bond trusts comprised of securitized mortgages.

Big Blue's legal operation will then oversee and pay for aggressive foreclosure defense or pro-active quiet title actions to challenge the standing of the alleged mortgage and note holders to foreclose on the acquired property. The Big Blue legal team will create brief and discovery banks and standards and intensively monitor lawyers hired to litigate cases.

What our company and partner Law Firms does is purchase your home subject to the existing mortgages and aggressively fight the lenders who are likely to foreclose on your home shortly. The purpose of this is to settle the outstanding liens using litigation.

We identify and acquire carefully pre-selected parcels of residential real estate owned by individuals who have been discharged from Chapter 7 Bankruptcy in situations where the Bankruptcy Trustee has abandoned any claim to the property.

Big Blue Capital Partners will acquire the interest subject to the mortgage after discharge, but before the mortgage holder seeks to foreclose and aggressively litigate the validity of the mortgage lien. Through this process, we will attempt to purchase the security interests in the properties at a substantial discount.



We are only focusing on Chapter 7 homeowners at this time, as it alleviates for the most part the deficiencies, etc. and they are typically facing losing the home back to the bank very shortly. These homeowners are typically more educated with the process since they have addressed loan mods and short sales throughout the time in foreclosure and we can focus on business of acquiring, litigating and property managing homes. It's a much simpler process with post 7 people. We will consider Chapter 13 people but for now Marc wants to stay focused on the 7's as there are so many of them out there.

Our team, led by experienced Lawyers, Mortgage experts, Title experts and Real Estate professionals, will take your place in the foreclosure process and if your property qualifies, and is accepted by us, we will aggressively litigate the imminent foreclosure process by the bank or lender, and take over the property entirely.

Should you be accepted into either of our programs all of the responsibilities related to the ownership of your home will shift to Big Blue Capital Partners, LLC and it's Law Firm. Should you decide to stay in your property, you will become a tenant with a genuine opportunity to regain ownership of your home if we are successful in our efforts by receiving an option to purchase the property back at some time in the future.

BIG BLUE LITIGATION TEAM:

BOWLES FERNANDEZ LAW LLC
Lake Oswego, OR

DANN, DOBERDRUK & WELLEN
Cleveland, OH

THE LARSEN LAW FIRM, LLC
Chicago, IL

MARK ZANIDES LAW OFFICES- a Former US Asst. Attorney General in the Bay Area.
Santa Ana, CA

LUSK, DRASITES, TOLISANO & SMITH
Cape Coral, Florida

PADDY DEIGHAN, Esq. PhD
Haddonfield, NJ

PROSPER LAW CORPORATION
Los Angeles, CA
Las Vegas, NV.

We are currently only working in these state right now in Oregon Massachusetts, Florida, Illinois, New York and California, where our counsel is Mark Zanides, a former US Asst.

Attorney General in the Bay area. We are being as conservative as we can in this area to make sure that we have all of our ducks in a row. We don't take on a property until we analyze the Pooling and Servicing Agreement and have a good handle as to the underlying issues with the mortgage.

We cannot help everybody, we do not work with GSE loans as they do not have the same improprieties as the privately secured bond trusts and they do not have the same type of guarantees that come along with government loans.

Listen Ladies and Gentleman, this is a true way to fight these lenders, our team is experienced and we want to help.

We will not be successful 100% of the time, however if we are careful with analyzing the characteristics of the underlying loan, we should be able to increase the likelihood of potential success, based on the current case law in each respective state, which is changing every day. The homeowner will have the option of staying in the home at a below fair market value rent during the litigation process. Our law firm & partners will only litigate through our program, To be considered into our program email me at: bmw@bigbluellc.com leave your contact info so we may send you the program packet.

B. Michael White
Big Blue LLC
Partner
925-478-1949
bmw@bigbluellc.com

2012 WL 1605784
Only the Westlaw citation is currently available.
United States District Court,
D. Oregon.

BIG BLUE CAPITAL PARTNERS, LLC, Plaintiff,
v.
RECONTRUST COMPANY, N.A.; The Bank of
New York Mellon fka the Bank of New York, as
trustee for the benefit of Cwalt, Inc., alternative
loan trust 2007–19 mortgage pass through
certificates, series 2007–19; and Mortgage
Electronic Registration Systems, Inc., Defendants.

No. 6:11–CV–06368–AA.  |  May 4, 2012.

**Attorneys and Law Firms**

John P. Bowles, Jeffrey A. Myers, Bowles Fernandez Law
LLC, Lake Oswego, Oregon, for plaintiff.

Pilar C. French, Kristen L. Tranetzki, Lane Powell PC,
Portland, Oregon, for defendants.

## OPINION AND ORDER

AIKEN, Chief J.

*1 Defendants ReconTrust Company, N.A. ("ReconTrust"),
the Bank of New York Mellon fka the Bank of New York
("BNYM"), and Mortgage Electronic Registration Systems,
Inc. ("MERS") move to dismiss plaintiff Big Blue Capital
Partners, LLC's claims pursuant to Fed.R.Civ.P. 12(b)(1)
and Fed.R.Civ.P. 12(b)(6). In addition, defendants filed two
motions for judicial notice. For the reasons set forth below,
defendants' motions [1] are granted and this case is dismissed.

## BACKGROUND

On April 2, 2007, Thomas and Trina Reid [2] took out a loan
from Plaza Home Mortgage, Inc. ("Plaza"), in the amount of
$455,000, to purchase a residential property (the "Property").
Pursuant to this transaction, the Reids executed a promissory
note (the "Note") in favor of Plaza. The Note was secured by
a trust deed (the "Deed of Trust"), which lists Plaza as the
lender, MERS as the beneficiary, and Ticor Title Company as

the trustee. The Deed of Trust was filed in Douglas County,
Oregon on April 6, 2007.

Pursuant to the Deed of Trust, the Reids agreed to make
monthly mortgage payments as required under the Note; the
Reids also agreed that they would be in default, and subject to
foreclosure, if they failed to make such payments. In addition,
the Deed of Trust required the Reids to obtain approval, in
writing, before selling or transferring their interest in the
Property.

In 2009, the Reids stopped making the requisite loan
repayments, thereby materially defaulting. On February 4,
2010, MERS assigned the Deed of Trust to BNYM, as trustee
for certificate holder CWALT, Inc. Also on February 4, 2010,
MERS appointed ReconTrust to serve as successor trustee
for the Deed of Trust. That same day, ReconTrust executed
a Notice of Default and Election to Sell the Property. On
February 8, 2010, the Assignment of the Deed of Trust,
Appointment of Successor Trustee, and Notice of Default
and Election to Sell were recorded in the official records of
Douglas County.

On December 1, 2010, ReconTrust issued a Rescission of the
Notice of Default, which was duly recorded in the official
records of Douglas County on December 6, 2010.

On December 9, 2010, the Reids filed a petition for relief
under Chapter 7 of the Bankruptcy Code. The petition
identified the value of their interest in the Property as
$450,000, subject to several secured claims, including one by
"Bank of America Home Loans" in the amount of $450,000.
The Reids, however, did not list any purported claims against
defendants as assets. On March 10, 2011, the bankruptcy
court granted the petition, thereby discharging the Reids'
debts.

On May 26, 2011, ReconTrust executed a second Notice
of Default and Election to Sell the Property. On May 31,
2011, the second Notice of Default and Election to Sell
was recorded in the official records of Douglas County.
The Notice stated that the foreclosure sale was scheduled
for October 6, 2011 at the Douglas County Courthouse. A
foreclosure sale has not yet occurred.

*2 On October 11, 2011, the Reids executed a quitclaim
deed, conveying their interest in the Property to plaintiff, a
limited liability company created under the laws of Ohio. [3]
Pursuant to that contract, plaintiff agreed to pay the Reids



$10,000 for the Property: $1000 immediately and $9000 "upon complete satisfaction of [plaintiff] in the negotiation and settlement of [the] underlying lien holder's interest."

On October 12, 2011, plaintiff filed a complaint in Douglas County Circuit Court; plaintiff asserts eight claims against defendants, all arising out of defendants' alleged failure to comply with the non-judicial foreclosure procedures outlined in the Oregon Trust Deed Act ("OTDA"). On November 18, 2011, defendants removed plaintiff's claims, on the basis of diversity jurisdiction, to this Court. Subsequently, defendants moved to dismiss plaintiff's complaint.

## STANDARDS

Where the court lacks subject-matter jurisdiction, the action must be dismissed. Fed.R.Civ.P. 12(b)(1). A challenge to standing is appropriately raised pursuant to Fed.R.Civ.P. 12(b) (1). *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir.2010). The party who seeks to invoke the subject-matter jurisdiction of the court has the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). In such instances, the court may hear evidence regarding subject-matter jurisdiction and resolve factual disputes where necessary; however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the [court] from evaluating for itself the merits of jurisdictional claims." *Kingman Reef Atoll Invs., LLC v. United States,* 541 F.3d 1189, 1195 (9th Cir.2008).

Similarly, where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walters,* 719 F.2d 1422, 1424 (9th Cir.1983). However, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Tgbal,* 556 U.S. 662, 681 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Bacca,* 652 F.3d 1202, 1216, *reh'g en banc denied,* 659 F.3d 850 (9th Cir.2011).

## DISCUSSION

Defendants assert that plaintiff's complaint must be dismissed because this Court lacks subject-matter jurisdiction. In addition, defendants contend that plaintiff fails to state plausible claims for relief.

### I. *Motions for Judicial Notice*

*3  To support their motion to dismiss, defendants request that this Court take judicial notice of: plaintiff's Certificate and Articles of Incorporation, filed on October 13, 2011; the Deed of Trust; the Notices of Default and Elections to Sell; the Assignment of the Deed of Trust; the Appointment of Successor Trustee; the Rescission of the Notice of Default; the Reids' petition for relief under Chapter 7 of the Bankruptcy Code; the bankruptcy court docket for the Reids' case; a printout of an online advertisement for plaintiff, describing its business strategy; *Niday v. GMAC Mortg.,* Case No. CV 10–02–0001, Transcript of Proceedings (Clackamas Cnty. Cir. Crt. Oct. 28, 2010); *Buckland v. Aurora Loan Servs.,* Case No. 10–CV–1023, Judgment (Josephine Cnty. Cir. Crt. March 18, 2011); *Spencer v. Guaranty Bank,* Case No. 10CV0515ST, Memo. Op. (Deschutes Cnty. Cir. Crt. May 5, 2011); *Nigro v. Northwest Tr. Servs., Inc.,* Case No. 11–CV–0135, Letter Op. (Josephine Cnty. Cir. Crt. May 11, 2011); *U.S. Bank v. Flynn,* Case No. 11–8011, Letter Op. (Columbia Cnty. Cir. Crt. June 23, 2011); *Somers v. Deutsche Bank Nat'l Trust Co.,* Case Nos. CV 11–02–0133 and FE 110027, Letter Op. (Clackamas Cnty. Cir. Crt. July 6, 2011); *Yovko v. Northwest Tr. Servs., Inc.,* Case No. C11–0703CV, Order (Washington Cnty. Cir. Crt. Aug. 3, 2011); *Yovko v. Northwest Tr. Servs., Inc.,* Case No. C11–0703CV, Order (Washington Cnty. Cir. Crt. Nov. 22, 2011); *Fed. Nat'l Mortg. Assoc. v. Goodrich,* Case No. 11001639E, Judgment (Jackson Cnty. Cir. Crt. Dec. 7, 2011); *Melli v. ReconTrust Co.,* Case No. C12–0112CV, Order (Washington Cnty. Cir. Crt. Jan. 11, 2012); *Lind v. Fidelity Nat'l Title Ins. Co.,* Case No. C116471CV, Order (Washington Cnty. Cir. Crt. Jan. 23, 2012); and *Mashia v. Northwest Tr. Servs., Inc.,* Case No. 1008–12752, Op. and Order (Multnomah Cnty. Cir. Crt. Jan. 23, 2012). Plaintiff does not oppose defendants' motions.

Review of a 12(b)(6) motion is generally limited to the complaint. *United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir.2003). However, a "court may take judicial notice of 'matters of public record.' " *Lee v. City of Los Angeles,* 250

Case 15-31954-rld7    Doc 27    Filed 08/10/15
Case 15-31954-rld7    Doc 32    Filed 08/18/15

F.3d 668, 689 (9th Cir.2001) (quoting *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986)). Further, a court may take judicial notice of extrinsic documents if they are integral to the plaintiff's claims and their authenticity is undisputed. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 n. 4 (9th Cir.1998).

Under the Federal Rules of Evidence, a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201; *see also Ritchie,* 342 F.3d at 909. Facts subject to judicial notice may be considered on a motion to dismiss. *Mullis v. U.S. Bankruptcy Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987).

*\*4* The relevant facts in this case are largely undisputed. Further, most of the documents that defendants seek judicial notice of are recorded in the official records of Douglas County or case law, which are already part of the public record and are therefore capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

With the exception of plaintiff's online advertisement, I find that the additional documents introduced by defendants are also not subject to reasonable dispute. Plaintiff's online advertisement, however, is not part of the public record and, additionally, does not meet the requirements of Fed.R.Evid. 201. Moreover, plaintiff did not incorporate this document by reference, as plaintiff does not make any mention of its business practices in the complaint, other than to describe the process by which it purchased the Reids' Property. *See* Compl. ¶¶ 19–22. Therefore, except in regard to plaintiff's online advertisement, defendants' requests for judicial notice are granted.

## II. *Motion to Dismiss*

The issue at this stage in the proceedings is whether plaintiff has Article III and prudential standing; or, alternatively, whether plaintiff can allege any plausible claims for relief relating to defendants' attempted foreclosure of the Property.

### A. *Article III Standing*

The standing jurisprudence of federal courts "contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, [and] prudential standing,

which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified School Dist. v. Newdow,* 542 U.S. 1, 11 (2004) (citations and internal quotations omitted).

The "irreducible constitutional minimum of standing" requires three elements: 1) plaintiff must have suffered an "injury in fact"; 2) the injury must be "fairly traceable to the challenged action of the defendant"; and 3) "it must be likely ... that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 560–61 (citations and internal quotations omitted).

Defendants contend that plaintiff lacks standing because its " 'injury' resulted from its *own decision* to purchase an encumbered property from a defaulting borrower." Defs.' Memo. in Supp. of Mot. Dism. 9 (emphasis in original). Defendants argue that a "self-inflicted injury like this" does not satisfy the traceability requirements of Article III. *Id.* at 10 (citing *Pennsylvania v. New Jersey,* 426 U.S. 660, 664 (1976)).

Conversely, plaintiff asserts that, "as the owner of the property, [it] will imminently suffer the loss of property for which it has paid consideration ... [t]he fact that [p]laintiff was aware of the imminent injury in no way prevents [p]laintiff from suffering it." Pl.'s Resp. to Mot. Dism. 12. Plaintiff then argues that defendants' reliance on *Pennsylvania v. New Jersey* is misplaced, "because the injury is not being inflicted upon [p]laintiff by [p]laintiff's actions, but by the wrongful foreclosure process initiated and maintained by [d]efendants." *Id* .

*\*5* Thus, it is undisputed that plaintiff knowingly purchased the Property after the Reids materially defaulted on the Note and defendants initiated non-judicial foreclosure proceedings. *Id.; see also* Compl. ¶¶ 19–22. It is also undisputed that plaintiff had no involvement whatsoever in the lending process and is not named in, or a party to, any of the loan or foreclosure documents. *See generally* Deed of Trust; Assignment of the Deed of Trust; Notices of Default and Elections to Sell; Rescission of the Notice of Default; Appointment of Successor Trustee; *see also* Compl. ¶ 5 (the Note "is solely between [the] Reid[s] ... and Lender"). Moreover, the record reveals that the Reids took out the loan for the Property in their individual capacities and for their own residential use. Accordingly, the allegations in plaintiff's complaint all stem from defendants' response to the Reids' inability to make the requisite payments under the Note.

Therefore, plaintiff did not suffer an injury that is fairly traceable to the challenged actions of defendants. *See AOM Group, LLC v. Downey Sav. & Loan Ass'n, F.A.,* 2010 WL 3342024, *1 n. 1 (D.Ariz. Aug. 25, 2010) (company that purchased properties from borrowers in default in order to challenge the statutory non-judicial foreclosure proceedings lacked constitutional standing, citing *Fleck & Assocs., Inc. v. City of Phoenix,* 471 F.3d 1100, 1104 (9th Cir.2006)); *AOM Group LLC v. Provident Funding Assocs. LP,* 2010 WL 3342020, *1 (D.Ariz. Aug. 25, 2010) (same). Rather, defendants are correct that, to the extent that plaintiff suffered an injury, it was due to plaintiff's own actions in purchasing the Property after non-judicial foreclosure proceedings had been commenced.

Further, the record makes clear that plaintiff's sole purpose in initiating this suit was to frustrate and delay non-judicial foreclosures under the OTDA in order to exact a settlement from the lender; plaintiff capitalizes on this ruse by purchasing properties, at a fraction of their value, from borrowers who have already materially defaulted on their loan obligations. *See* Compl. ¶¶ 19–22; *see also* Compl. Ex. 3 at pg. 1 (contract conveying the Property from the Reids to plaintiff makes payment of 90% of the purchase price contingent upon plaintiff's ability to satisfactorily settle its claims against defendants).

These are precisely the circumstances that Article III's standing requirements seek to prevent federal courts from presiding over. As such, because plaintiff lacks Constitutional standing, this Court does not have subject-matter jurisdiction. Therefore, defendants' motion to dismiss is granted.

## B. *Prudential Standing*

Regardless, even if plaintiff was able to meet the "irreducible constitutional minimum of standing" mandated by Article III, this action would nonetheless be dismissed due to prudential considerations.

The "prudential component of standing precludes the exercise of [subject-matter jursidiction] even where the Constitution's 'irreducible minimum' requirements have been met." *Or. Advocacy Ctr. v. Mink,* 322 F.3d 1101, 1108 (9th Cir.2003); *see also Allen v. Wright,* 468 U.S. 737, 751 (1984) (the court lacks subject-matter jurisdiction, due to prudential limitations, where a complaint "rais[es] another person's legal rights" or where a "complaint [does not] fall within the zone of interests protected by the law invoked").

*6 Accordingly, defendants also assert that this action must be dismissed because plaintiff's claims are premised on the legal rights or interests of the Reids, a non-party to this suit. In addition, plaintiff contends that the OTDA was only intended to protect those who have a duty to repay the Note and, as such, plaintiff "does not come within the 'zone of interests' that the OTDA was enacted to protect." Defs.' Memo. in Supp. of Mot. Dism. 10.

Plaintiff does not respond to defendants' argument relating to the "zone of interests" protected by the OTDA, but does contend that this action is not barred by prudential considerations because "[p]laintiff is not seeking to exercise the rights of any third party, it is seeking to exercise its own right as the owner of the [P]roperty." Pl.'s Resp. to Mot. Dism. 13.

### i. *Third–Party Standing*

"As a general rule, a third-party does not having standing to bring a claim asserting a violation of someone else's rights." *Martin v. Cal. Dep't of Veterans Affairs,* 560 F.3d 1042, 1050 (9th Cir.2009) (citing *Powers v. Ohio,* 499 U.S. 400, 410 (1991)). This rule exists to avoid "the adjudication of rights which those not before the [c]ourt may not wish to assert, and [to ensure] that the most effective advocate of the rights at issue is present to champion them." *Elk Grove,* 542 U.S. at 15 n. 7 (citations and internal quotations omitted).

Accordingly, the rule applies even when the very same allegedly illegal act that affects the litigant also affects a third-party. *See United States v. Pavner,* 447 U.S. 727, 731–732 (1980). While there are a number of exceptions to this general rule, plaintiff does not argue, and the Court does not find, that any of these exceptions apply.

Thus, the sole issue is whether plaintiff's claims are premised upon its own rights or those of a third-party. As discussed above, plaintiff was not the original borrower and had no involvement in the lending process. Although plaintiff purports to have acquired the Property, plaintiff does not allege that it is a party to the Note or Deed of Trust. Moreover, under the terms of the Deed of Trust, the Reids were required to have written permission from the lender, or its successors and assigns, in order to transfer or sell their interest in the Property, which plaintiff does not allege occurred in this case. *See* Deed of Trust at 10. Accordingly, the Reids, rather than plaintiff, remain the parties required to repay the Note.

As such, plaintiff's complaint asserts the rights of a third-party, as defendants' allegedly wrongful non-judicial foreclosure proceedings infringed only upon the Reids' interests.[4] *See HPG Corp. v. Aurora Loan Servs., LLC,* 436 B.R. 569, 580 (E.D.Cal.2010) (corporation did not have prudential standing, on behalf of homeowners in default on their loan obligations, to challenge the lender's alleged failure to follow statutory non-judicial foreclosure procedures). The fact that plaintiff interjected itself into defendants' non-judicial foreclosure, via a real estate purchase contract, in order to profit from the Reids' unfortunate circumstances cannot remedy this defect.

*7 Finally, plaintiff fails to demonstrate any hindrance the Reids' ability to protect their own interests. Rather, the influx of cases arising out of non-judicial foreclosures around the country demonstrate that homeowners are capable of asserting their own rights. *See Bertrand v. Suntrust Mortg., Inc.,* 2011 WL 1113421, *1 (D.Or. March 23, 2011) (noting the "veritable tsunami of investigation into and litigation over mortgage foreclosure practices"). The fact that individuals in foreclosure proceedings may be unable to hire legal counsel is not "the type of hindrance necessary to allow another to assert the indigent [party's] rights." *Kowalski v. Tesmer,* 543 U.S. 125, 132 (2004). Accordingly, plaintiff does not have prudential standing to bring the claims asserted in the complaint. Therefore, plaintiff's claims must be dismissed for this additional reason.

### ii. *"Zone of Interests" Protected by the OTDA*

In assessing the "zone of interests" protected by a statute, a court need not "inquire whether there has been a congressional intent to benefit the would-be plaintiff," but instead must determine only whether the plaintiff's interests are among those "arguably ... to be protected" by the statutory provision. *Nat'l Credit Union v. First Nat'l Bank & Trust Co.,* 552 U.S. 478, 489 (1998). As such, the "zone of interests" test

"is not meant to be demanding." *Clarke v. Secs. Indus. Ass'n,* 479 U.S. 388, 399–400 (1987).

Despite this low threshold, plaintiff nevertheless does not fall within the "zone of interests" created by the OTDA. The OTDA was enacted "to protect [borrowers] from the unauthorized foreclosure and wrongful sale of property, while at the same time providing [lenders] with a quick and efficient remedy." *Staffordshire Inv., Inc. v. Cal–Western Reconveyance Corp.,* 209 Or.App. 528, 542, 149 P.3d 150 (2006). To accomplish this goal, the OTDA requires that the lender strictly comply with its provisions in order to effectuate non-judicial foreclosure. *Id.; James v. Recontrust Co.,* 2012 WL 653871, *5 (D.Or. Feb. 29, 2012); *see also* Or.Rev.Stat. §§ 86.705–86.795.

As such, there is nothing the in the OTDA that even arguably was intended to protect corporate entities, such as plaintiff, that purchase properties already in default and seek to profit by extracting a settlement from the lender. Therefore, this Court lacks subject-matter jurisdiction because plaintiff's interests do not fall within the purview of the OTDA.

### CONCLUSION

Defendants' Request for Judicial Notice (doc. 12) is GRANTED, except in regard to plaintiff's online advertisement, as to which the motion is DENIED. Defendants' Supplemental Motion for Request for Judicial Notice (doc. 16) is GRANTED. Further, defendants' Motion to Dismiss (doc. 10) is GRANTED. Accordingly, defendants' request for oral argument is DENIED as unnecessary. This case is DISMISSED and all pending motions are DENIED as moot.

*8 IT IS SO ORDERED.

### Footnotes

1   Defendants' Supplemental Motion for Request for Judicial Notice is granted in its entirety; defendants' Request for Judicial Notice is also granted, except in regard to plaintiff's online advertisement, as to which the motion is denied.

2   The Reids are not a party to this litigation.

3   Plaintiff did not actually become a formal business entity until October 13, 2011, two days after it bought the Property from the Reids and one day after it filed the present action. In addition, plaintiff was not licensed to do business in Oregon until January 17, 2012. *See* Pl.'s Resp. to Mot. Dism. 13.

4   In many instances, plaintiff appears to allege that it was the original borrower. Compl. ¶¶ 68, 70, 78, 83. For example, the complaint asserts that "[p]laintiff was not in default on May 31, 2011," which was months before plaintiff even purchased the Property from

Case 15-31954-rld7    Doc 27    Filed 08/10/15
Case 15-31954-rld7    Doc 32    Filed 08/18/15

the Reids. *Id.* at ¶ 83. Thus, the pleadings themselves belie plaintiff's assertion that it's claims are not premised on the rights of a third-party.

---

End of Document

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1870752
Only the Westlaw citation is currently available.
United States District Court,
D. Oregon.

BIG BLUE CAPITAL PARTNERS, LLC, Plaintiff,
v.
RECONTRUST COMPANY, N.A.; The Bank of
New York Mellon fka The Bank of New York, as
trustee for the benefit of Cwalt, Inc., alternative
loan trust 2006–45T1 mortgage pass through
certificates, series 2006–45T1; and Mortgage
Electronic Registration Systems, Inc.; Defendants.

No. 6:11–CV–1412–TC. | May 21, 2012.

**Attorneys and Law Firms**

Jeffrey A. Myers, John P. Bowles, Bowles Fernandez Law
LLC, Lake Oswego, OR, for Plaintiff.

Kristen L. Tranetzki, Pilar C. French, Lane Powell, PC,
Portland, OR, for Defendants.

## OPINION AND ORDER

COFFIN, Magistrate J.

**\*1** Defendants ReconTrust Company, N.A. ("ReconTrust"),
the Bank of New York Mellon fka the Bank of New York
("BNYM"), and Mortgage Electronic Registration Systems,
Inc. ("MERS") move to dismiss plaintiff Big Blue Capital
Partners, LLC's complaint pursuant to Fed.R.Civ.P. 12(b)(1)
and Fed.R.Civ.P. 12(b)(6). The motion has been fully briefed
and this court heard oral argument on the matter. [1] As set forth
below, the motion to dismiss is allowed due to plaintiff's lack
of standing.

Judge Aiken recently dismissed a similar case for lack of
standing. *Big Blue Capital Partners, LLC v. ReconTrust
Company N.A .,* Case No. 6: 11–cv–6368AA. That case and
the present case essentially have the same parties, very similar
facts and the same attorneys. This court agrees with the
reasoning of Judge Aiken's opinion and, as discussed in more
detail below, it is appropriate to dismiss the present case for
a lack of standing.

## BACKGROUND

In October, 2006, Daryl and Janet Richardson [2] took out a
loan from Countrywide Home Loans ("Countrywide") in the
amount of $1,500,000, to purchase property (the "Property").
Pursuant to this transaction, the Richardsons executed a
promissory note (the "Note") in favor of Countrywide. The
Note was secured by a trust deed (the "Deed of Trust"), which
lists Countrywide as the lender and MERS as the beneficiary.
The Deed of Trust was filed in Douglas County, Oregon.

Pursuant to the Deed of Trust, the Richardsons agreed to make
monthly mortgage payments as required under the Note; the
Richardsons also agreed that they would be in default, and
subject to foreclosure, if they failed to make such payments.
In addition, the Deed of Trust required the Richardsons to
obtain approval, in writing, before selling or transferring their
interest in the Property.

The Richardsons stopped making the required loan payments
two years ago and defaulted. MERS thereafter executed
and caused to be recorded an Assignment of Deed of
Trust to BNYM, in care of BAC Home Loan Servicing
LP, in the Douglass County Records Office. BNYM,
through BAC Home Loan Servcing LP, executed and
caused to be recorded an Appointment of Successor Trustee,
appointing ReconTrust, in the Douglass County Record's
Office. ReconTrust then commenced non-judicial foreclosure
proceedings by recording a Notice of Default and Election
to Sell on October 27, 2010, in the Douglass County
Records Office. ReconTrust cancelled and withdrew the
Notice of Default and Election to Sell on February 24,
2011. ReconTrust again commenced non-judicial foreclosure
proceedings, by recording a Notice of Default and Election
to Sell on June 10, 2011, in the Douglass County Record's
Office. This Notice of Default set the foreclosure sale for
October 17, 2011, but the sale has not yet occurred.

On October 17, 2011, the same day on which the Trustee's
Sale was to occur, the Richardsons executed a quitclaim deed
purporting to convey their interest in the Property to plaintiff.
Plaintiff is a limited liability company that was created under
the laws of Ohio. Although the Deed of Trust requires lender
approval for this sale, plaintiff does not allege that it or the
Richardsons sought or obtained such approval.

**\*2** On October 18, 2011—one day after acquiring the
property by quitclaim deed—plaintiff filed a complaint in



Douglas County Circuit Court. Plaintiff asserted several claims against defendants arising out of defendants' alleged failure to comply with the non-judicial foreclosure procedures outlined in the Oregon Trust Deed Act ("OTDA"). Defendants removed the action to this court on the basis of diversity jurisdiction.

## STANDARDS

Where the court lacks subject-matter jurisdiction, the action must be dismissed. Fed.R.Civ.P. 12(b)(1). A challenge to standing is appropriately raised pursuant to Fed.R.Civ.P. 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir.2010). The party who seeks to invoke the subject-matter jurisdiction of the court has the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In such instances, the court may hear evidence regarding subject-matter jurisdiction and resolve factual disputes where necessary; however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the [court] from evaluating for itself the merits of jurisdictional claims." *Kingman Reef Atoll Invs., LLC v. United States,* 541 F.3d 1189, 1195 (9th Cir.2008).

## DISCUSSION

Defendants assert that plaintiff's complaint must be dismissed for lack of subject-matter jurisdiction as plaintiff lacks both Article III standing and prudential standing.

The standing jurisprudence of federal courts "contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, [and] prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified School Dist. v. Newdow,* 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (citations and internal quotations omitted).

### A. *Article III Standing*

The "irreducible constitutional minimum of standing" requires three elements: 1) plaintiff must have suffered an "injury in fact"; 2) the injury must be "fairly traceable to the challenged action of the defendant"; and 3) "it must be likely ... that the injury will be redressed by a favorable

decision." *Lujan,* 504 U.S. at 560–61 (citations and internal quotations omitted).

Defendants contend that plaintiff lacks standing because its "injury" resulted from its *own decision* to purchase an encumbered property from a defaulting borrower. Defendants argue that this self-inflicted injury does not satisfy the traceability requirements of Article III. *Id.* at 10 (citing *Pennsylvania v. New Jersey,* 426 U.S. 660, 664, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976)).

Plaintiff asserts that as the owner of the property, it will imminently suffer the loss of property for which it has paid consideration and the fact that plaintiff was aware of the imminent injury in no way prevents plaintiff from suffering it. Plaintiff then argues that defendants' reliance on *Pennsylvania v. New Jersey* is misplaced because the injury is not being inflicted upon plaintiff by plaintiff's actions, but by the wrongful foreclosure process initiated and maintained by defendants.

**\*3** It is undisputed that plaintiff knowingly purchased the Property after the Richardsons defaulted on the Note and defendants initiated non-judicial foreclosure proceedings. It is also undisputed that plaintiff had no involvement whatsoever in the lending process and is not named in, or a party to, any of the loan or foreclosure documents. Moreover, the record reveals that the Richardsons took out the loan for the Property in their individual capacities and for their use.

As set forth above, the allegations in plaintiff's complaint all stem from defendants' response to the Richardsons inability to make the requisite payments under the Note. As such, plaintiff did not suffer an injury that is fairly traceable to the challenged actions of defendants. See *AOM Group, LLC v. Downey Sav. & Loan Ass'n, F.A.,* 2010 WL 3342024, \*1 n. 1 (D.Ariz. Aug.25, 2010) (company that purchased properties from borrowers in default in order to challenge the statutory non-judicial foreclosure proceedings lacked constitutional standing, citing *Fleck & Assocs., Inc. v. City of Phoenix,* 471 F.3d 1100, 1104 (9th Cir.2006)); *AOM Group LLC v. Provident Funding Assocs. LP,* 2010 WL 3342020, \*1 (D.Ariz. Aug.25, 2010) (same). To the extent that plaintiff suffered an injury, it was due to plaintiff's own actions in purchasing the Property after non-judicial foreclosure proceedings had been commenced. [3]

### B. *Prudential Standing*

Even if plaintiff was able to meet the "irreducible constitutional minimum of standing" mandated by Article III, dismissal of this action would be appropriate due to prudential considerations.

The "prudential component of standing precludes the exercise of [subject-matter jursidiction] even where the Constitution's 'irreducible minimum' requirements have been met." *Or. Advocacy Ctr. v. Mink,* 322 F.3d 1101, 1108 (9th Cir.2003); *see also Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (the court lacks subject-matter jurisdiction, due to prudential limitations, where a plaintiff "rais[es] another person's legal rights" or where a "complaint [does not] fall within the zone of interests protected by the law invoked").

Defendants assert that this action must be dismissed because plaintiff's claims are premised on the legal rights or interests of the Richardsons, a non-party to this suit. In addition, plaintiff contends that the OTDA was only intended to protect those who have a duty to repay the Note and, as such, plaintiff does not come within the "zone of interests" that the OTDA was enacted to protect.

Plaintiff does not respond to defendants' argument relating to the "zone of interests" protected by the OTDA, but does contend that this action is not barred by prudential considerations because plaintiff is not seeking to exercise the rights of any third party and is seeking to exercise its own right as the owner of the Property.

### i. *Third–Party Standing*

"As a general rule, a third-party does not having standing to bring a claim asserting a violation of someone else's rights." *Martin v. Cal. Dep't of Veterans Affairs,* 560 F.3d 1042, 1050 (9th Cir.2009) (citing *Powers v. Ohio,* 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)). This rule exists to avoid "the adjudication of rights which those not before the [c]ourt may not wish to assert, and [to ensure] that the most effective advocate of the rights at issue is present to champion them." *Elk Grove,* 542 U.S. at 15 n. 7 (citations and internal quotations omitted). The rule applies even when the very same allegedly illegal act that affects the litigant also affects a third party. *See United States v. Payner,* 447 U.S. 727, 731–732, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980). While there are a number of exceptions to this general rule, plaintiff does not argue, and this court does not find, that any of these exceptions are applicable here.

*4 Plaintiff's claims are not premised upon its own rights, but on the rights of a third-party. As discussed above, plaintiff was not the original borrower and had no involvement in the lending process. Although plaintiff purports to have acquired the Property, plaintiff does not allege that it is a party to the Note or Deed of Trust. Moreover, under the terms of the Deed of Trust, the Richardsons were required to have written permission from the lender, or its successors and assigns, in order to transfer or sell their interest in the Property, which plaintiff does not allege occurred in this case. Accordingly, the Richardsons, rather than plaintiff, remain the parties required to repay the Note. As such, defendants' allegedly wrongful non-judicial foreclosure proceedings infringed upon the Richardsons' rights. Plaintiff's complaint therefore asserts the rights of a third-party rather than its own. *See HPG Corp. v. Aurora Loan Servs., LLC,* 436 B.R. 569, 580 (E.D.Cal.2010) (corporation did not have prudential standing to pursue claims against the lender, on behalf of homeowners in default on their loan obligations, based upon lender's alleged failure to follow statutory procedures when conducting non-judicial foreclosures). The fact that plaintiff interjected itself into defendants' non-judicial foreclosure, via a real estate purchase contract, in order to profit from the Richarsdsons' unfortunate circumstances cannot remedy this defect.

Plaintiff has also failed to demonstrate any hindrance to the Richardsons' ability to protect their own interests. Rather, the influx of cases arising out of foreclosures around the country demonstrates that homeowners facing foreclosure are capable of asserting their own rights. *See Bertrand v. Suntrust Mortg., Inc.,* 2011 WL 1113421, *1 (D.Or. March 23, 2011) (noting the "veritable tsunami of investigation into and litigation over mortgage foreclosure practices"). The fact that individuals in foreclosure proceedings may be unable to hire counsel is not "the type of hindrance necessary to allow another to assert the indigent [party's] rights." *Kowalski v. Tesmer,* 543 U.S. 125, 132, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004).

### ii. *"Zone of Interests" Protected by the OTDA*

In assessing the "zone of interests" protected by a statute, a court need not "inquire whether there has been a congressional intent to benefit the would-be plaintiff," but instead must determine only whether the plaintiff's interests are among those "arguably ... to be protected" by the statutory provision. *Nat'l Credit Union v. First Nat'l Bank & Trust Co.,* 552 U.S. 478, 489 (1998). As such, the "zone of interests" test "is not meant to be demanding." *Clarke v. Secs. Indus.*

*Ass'n*, 479 U.S. 388, 399–400, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987).

Despite this low threshold, plaintiff does not fall within the "zone of interests" protected by the OTDA. The OTDA was enacted "to protect [borrowers] from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy." *Staffordshire Inv., Inc. v. Cal–Western Reconveyance Corp.*, 209 Or.App. 528, 542, 149 P.3d 150 (2006). To accomplish this goal, the OTDA requires that the creditor strictly comply with its provisions in order to effectuate non-judicial foreclosure. *Id.; James v. Recontrust Co.*, 2012 WL 653871, *5 (D.Or. Feb.29, 2012); *see also* Or.Rev.Stat. §§ 86.705–86.795.

*5 In short, there is nothing in the OTDA that even arguably was intended to protect corporate entities, such as plaintiff, that purchase properties already in default and seek to profit by extracting a settlement from the creditor. Therefore, this court lacks subject-matter jurisdiction because plaintiff's interests do not fall within the purview of the OTDA.

## CONCLUSION

The motion(# 25) to withdraw as counsel for plaintiff is allowed. Defendants' requests for judicial notice (# 13, # 18) are allowed. Defendants' Motion to Dismiss (# 11) is also allowed and this action is dismissed.

IT IS SO ORDERED.

Footnotes

1   Defendants have also filed requests (# 13, # 18) for judicial notice which are not opposed and are allowed. A motion (# 25) to withdraw as counsel for plaintiff was recently filed and is allowed.

2   The Richardsons are not a party to this litigation.

3   Moreover, it appears that plaintiff's sole purpose in initiating this action was to frustrate and delay non-judicial foreclosures under the OTDA in order to exact a settlement from the lender; plaintiff capitalizes on this ruse by purchasing properties, at a fraction of their value, from borrowers who have already defaulted on their loan obligations.

---

2012 WL 2049455
Only the Westlaw citation is currently available.
United States District Court,
D. Oregon.

BIG BLUE CAPITAL a/b/n Big
Blue Capital Partners, Plaintiff,
v.
RECONTRUST COMPANY, N.A.; JPMorgan
Chase Bank, as trustee for GS Mortgage
Securities Corp GSR Mortgage Loan Trust
2004–7; and Bank America as successor by
merger to BAC Home Loan Servicing LP FKA
Countrywide Home Loan Servicing, Defendants.

No. 3:12–cv–00448–AA. | June 4, 2012.

**Attorneys and Law Firms**

Jeffrey A. Myers, John P. Bowles, Timothy J. Zimmerman, Bowles Fernandez Law, LLC, Lake Oswego, OR, for Plaintiff.

Kristen L. Tranetzki, Pilar C. French, Lane Powell, PC, Portland, OR, for Defendants.

**ORDER**

AIKEN, Chief Judge:

*1 Defendants ReconTrust Company, N.A., JPMorgan Chase Bank, and Bank of America move to dismiss plaintiff Big Blue Capital Partners' claims pursuant to Fed.R.Civ.P. 12(b)(1) and Fed, R. Civ. P. 12(b)(6). For the reasons set forth below, defendants' motion is granted and this case is dismissed.

In April 2004, Michael and Raquel Rich[1] took out a loan from Countrywide Home Loans, Inc. ("Countrywide"), in the amount of $432,000, to purchase a residential property (the "Property"). Pursuant to this transaction, the Riches executed a promissory note (the "Note") in favor of Countrywide. The Note was secured by a trust deed (the "Deed of Trust"), which lists Countrywide as the lender, Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, and CTC Real Estate Services as the trustee. The Deed of Trust was duly recorded in Clackamas County, Oregon.

Pursuant to the Deed of Trust, the Riches agreed to make monthly mortgage payments as required under the Note; the Riches also agreed that they would be in default, and subject to foreclosure, if they failed to make such payments. In addition, the Deed of Trust required the Riches to obtain approval, in writing, before selling or transferring their interest in the Property.

In 2008, the Riches stopped making the requisite loan repayments, thereby materially defaulting. In March 2009, MERS appointed ReconTrust Company, N.A. ("ReconTrust") to serve as successor trustee for the Deed of Trust. Thereafter, ReconTrust executed a Notice of Default and Election to Sell the Property. The Appointment of Successor Trustee and Notice of Default and Election to Sell were documented in the official records of Clackamas County. In January 2010, ReconTrust formally rescinded the Notice of Default and Election to Sell.

In June 2010, MERS assigned the Deed of Trust to Deutsche Bank. Deutsche Bank again appointed ReconTrust to serve as successor trustee; ReconTrust then issued a second Notice of Default and Election to Sell the Property. The Assignment of the Deed of Trust, Appointment of Successor Trustee, and Notice of Default and Election to Sell were recorded in Clackamas County. In March 2011, ReconTrust formally rescinded the second Notice of Default and Election to Sell.

In April 2011, Deutsche Bank assigned the Deed of Trust to BAC Home Loan Servicing, LP and ReconTrust issued a third Notice of Default and Election to Sell the Property. These documents were duly recorded in the official records of Clackamas County.

In November 2011, the Riches filed a petition for relief under Chapter 13 of the Bankruptcy Code. The petition identified the value of their interest in the Property as $450,000, subject to two secured claims by "Bank of America."[2] The Riches, however, did not list any purported claims against defendants as assets.

In January 2012, the bankruptcy court confirmed the Riches' Chapter 13 plan and lifted the automatic stay, which precluded the pending non-judicial foreclosure of the Property. Accordingly, ReconTrust reinstituted foreclosure proceedings by issuing an Amended Notice of Sale. The Amended Notice scheduled the sale of the Property for March 15, 2012. A foreclosure sale has not yet occurred.


Exhibit E

**\*2** On March 7, 2012, the Riches executed a bargain and sale deed, conveying their interest in the Property to plaintiff, a limited liability company created under the laws of Ohio. Pursuant to that contract, plaintiff agreed to pay the Riches $3,000 in exchange for the Property. Plaintiff, however, did not assume any obligation to repay the Note pursuant to this transaction. Further, the Riches did not obtain written consent from their lender prior to transferring their interest in the Property, as required by the Deed of Trust.

On March 13, 2012, plaintiff filed a complaint in this Court; plaintiff asserts two claims against defendants, both arising out of defendants' alleged failure to comply with the non-judicial foreclosure procedures outlined in the Oregon Trust Deed Act ("OTDA"). Subsequently, defendants moved to dismiss this case, asserting, in part, that plaintiff does not have standing.

Where the court lacks subject-matter jurisdiction, the action must be dismissed. Fed.R.Civ.P. 12(b)(1). A challenge to standing is appropriately raised pursuant to Fed.R.Civ.P. 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir.2010). The party who seeks to invoke the subject-matter jurisdiction of the court has the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). In such instances, the court may hear evidence regarding subject-matter jurisdiction and resolve factual disputes where necessary; however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the [court] from evaluating for itself the merits of jurisdictional claims." *Kingman Reef Atoll Invs., LLC v. United States,* 541 F.3d 1189, 1195 (9th Cir.2008).

Plaintiff has filed a number of actions in this District that arise out of virtually identical facts and involve essentially the same parties and attorneys; in each instance, the case was dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because plaintiff did not have standing. *See Big Blue Capital Partners, LLC v. ReconTrust Co., N .A. ("Big Blue I"),* 2012 WL 1605784, \*4–7 (D.Or. May 4, 2012); *Big Blue Capital Partners. LLC v. Recontrust Co., N.A, ("Big Blue II"),* 2012 WL 1870752, \*2–5 (D.Or. May 21, 2012). [3]

Specifically, as this Court recently explained, plaintiff lacked standing under Article III of the Consitution because it "knowingly purchased the Property after the [borrower] materially defaulted on the Note and defendants initiated non-judicial foreclosure proceedings." *See Big Blue I,* 2012 WL 1605784 at \*5. As such, plaintiff did not suffer an injury that was fairly traceable to defendants' challenged actions. *Id.*

Moreover, prudential standing was absent because plaintiff's claims were premised on a third-party's rights; namely, plaintiff's claims arose out of harm suffered by the non-party borrowers as a result of defendants' alleged failure to follow the non-judicial foreclosure procedures articulated in the OTDA. *Id.* at \*7. Plaintiff also did not have prudential standing because the OTDA "was [not] intended to protect corporate entities [that] purchase properties already in default and seek to profit by extracting a settlement from the lender." *Id.* Therefore, for the reasons set forth in *Big Blue I* and *Big Blue II,* this Court lacks subject-matter jurisdiction.

## CONCLUSION

**\*3** Defendants' Motion to Dismiss (doc. 13) is GRANTED. The parties' requests for oral argument are DENIED as unnecessary. Finally, this case is DISMISSED and all pending motions are DENIED as moot.

IT IS SO ORDERED.

Footnotes

1    The Riches are not a party to this litigation.

2    In addition to their initial mortgage, the Riches executed a second lien against the Property in the amount of $82,278, which is not at issue in this case.

3    Plaintiff also has a case pending before Judge Mosman. *See Big Blue Capital Partners, LLC v. Recontrust Co., N.A.,* Case No. 3:12–cv–00292–MO.

---

**End of Document**                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.